**UNITED STATES of America, Appellee,**

v.

**Troy SCHNURSTEIN, Appellant.**

No. 92–1207.

United States Court of Appeals, Eighth Circuit.

Submitted June 9, 1992.

Decided Oct. 14, 1992.

Rehearing Denied Nov. 20, 1992.

Thomas J. O'Flaherty, Cedar Rapids, Iowa, argued (Anna Wirt O'Flaherty, on the brief), for appellant.

Kandice A. Wilcox, Asst. U.S. Atty., Cedar Rapids, Iowa, argued, for appellee.

Before BOWMAN and LOKEN, Circuit Judges, and HUNTER *, Senior District Judge.

ELMO B. HUNTER, Senior District Judge.

## I. STATEMENT OF THE CASE

Defendant was charged in a superseding indictment with two counts of knowingly using intimidation, physical force, or threats against Stephen Amo with the intent to hinder, delay, or prevent the communication to a law enforcement officer of information relating to the commission or possible commission of federal offenses. Jury trial began September 4, 1991, and on

September 6, 1991, a jury returned its verdicts, finding Defendant not guilty on Count I and guilty on Count II. Defendant was sentenced to forty-one months imprisonment. The judgment in this case was filed January 23, 1992, and a timely notice of appeal followed.

## II. STATEMENT OF FACTS

Defendant and Amo were acquaintances and involved in drug transactions between August and December of 1989.[1] Amo had been involved in selling drugs since 1975 and was indicted on drug related charges on January 26, 1991. After Amo's arrest on the original indictment, information pertaining to his arrest and charges appeared in a local newspaper. In March of 1990, officers went to Amo's home to discuss a plea agreement, part of which would require Amo to cooperate with law enforcement officers. Amo signed the plea agreement with the U.S. Attorney's Office on April 25, 1991.

Within a few days after the officers approached Amo in March of 1990, Defendant went to Amo's house and told Amo that he heard Amo had some "visitors" and wanted to know what they wanted. Amo told Defendant that the "visitors" had wanted him to sign a plea agreement, but he refused to sign it. Amo stated that Defendant told him that if anything ever happened to him he would blow Amo's head off. Defendant also grabbed Amo by the beard and attempted to drag Amo outside of his house.

After being indicted in January of 1991, Amo told his attorney about the March, 1990, threat by Defendant. On April 5, 1991, Amo appeared in court to be arraigned on a superseding indictment. On the same date, he signed a "proffer" letter agreeing to meet with law enforcement officers and provide information for which he would receive informal use immunity.

---

* The Honorable Elmo B. Hunter, Senior United States District Judge, Western District of Missouri, sitting by designation.

1. At one time, Amo traded drugs to defendant for a refrigerator. Also, Amo asserts that he had a shotgun sitting by his back door when defendant came over to purchase drugs in February of 1990, and after Defendant left, the shotgun was missing. Jo Lenox, former girlfriend of the Defendant, also testified that she saw the Defendant in possession of drugs between December 3, 1990, and March of 1991.

Later that evening, Amo went to T.A. Lounge with his wife, where he told someone about signing the proffer letter. Amo left T.A.'s Lounge and went to another bar and then returned to T.A.'s Lounge about 9:00 p.m. Amo was standing at the bar, drinking and talking to Tony Allen, bartender and bar owner, when he observed Defendant entering the tavern with another man, Richard Shields. Defendant walked over to the bar where Amo was standing. Allen observed Amo and Defendant arguing, and told them to leave if they were going to fight or argue. Defendant said, "Me and Steve are friends" and the two ordered a beer. Defendant then asked Amo to accompany him to a side room near the front door and Amo agreed. Allen observed the two talking in this room. When he next looked at the room, the light was off. Barb Allen, co-owner of T.A.'s Lounge, also worked that night and also observed Defendant and Amo together.

Amo testified that after Defendant and he went into the side room, Defendant told Amo that he had heard that Amo was telling people that Defendant was going to shoot Amo and that Defendant had AIDS. Defendant then called Richard Shields in and asked Shields to confirm that Amo had made those statements. Shields, who was standing in the doorway next to the light switch, confirmed that the statements were made by Amo. At one point in this discussion, Defendant stated that he did not care if Amo was wearing a wire, because "I haven't done anything for a long time." The light went off and Amo was repeatedly kicked and beaten, and subsequently hospitalized overnight. Barb Allen testified she noticed that after Amo was assaulted, Richard Shields stood with his arms and legs outstretched in the entry way while Defendant ran out the front door of the bar.

Deputy Brian Bockhaus investigated the assault during the early morning hours on April 6, 1991, and located Defendant sitting in a parked car behind a bar about one-half block from T.A.'s Lounge. Bockhaus approached Defendant, who identified himself as "Karrie Sanderson." Bockhaus recognized Defendant because he had stopped him before. After Bockhaus gave Defendant his *Miranda* warnings, Defendant told him that he had been in Rod's Lounge the entire evening and had not been in T.A.'s Lounge. While being processed at the jail, Defendant was questioned about a cut on the knuckle of his right hand. Defendant stated that he had cut his hand chopping wood earlier that day. He further stated that he had misunderstood Bockhaus's question about who he was and thought that the officer had asked him who he was in town to see.

After the direct examination of Amo, Defendant requested all Jencks Act material. The U.S. complied with the Defendant's request and gave Defendant Amo's statements. During cross examination, Amo indicated that he had filled out the financial statement form pursuant to his plea agreement. During a sidebar, Defendant asked the government to turn over a copy of the financial statement, and the Assistant U.S. Attorney stated that she did not know whether or not the financial information had been received and offered to check Amo's file. The defense indicated that they would check the matter with Mr. Nadler, Amo's attorney, at the next recess and explore the matter further on recross, if necessary. During Defendant's direct examination of Mr. Nadler, Nadler stated that while Amo had given the requested financial information to him, he had not completed the form and turned it over to the U.S. Attorney's Office.

During closing argument, the Assistant U.S. Attorney made a reference to investigating drug cases. The objection to this comment was sustained. The Assistant U.S. Attorney continued to explain how drug offenses are investigated and that using people like Steven Amo was necessary. An objection on the same ground was then overruled.[2]

---

**2.** The U.S. Attorney points out that one element of the charged offense is that Defendant can hinder, delay or prevent Amo from disclosing information related to Title 21, i.e., drug offenses.

## III. SUFFICIENCY OF THE EVIDENCE

Defendant asserts that insufficient evidence supports the guilty verdict on Count II, which was knowingly using intimidation, physical force or threats against Amo, with the intent to hinder, delay or prevent Amo from communicating with a law enforcement officer about possible drug violations. The district court rejected Defendant's claim and Defendant's motion for judgment of acquittal. Defendant asserted that acquittal on Count I necessitated setting aside the verdict on Count II, inasmuch as the jury disbelieved Amo's testimony.

■ The standard of review of a jury's verdict is whether, viewing the evidence in the light most favorable to the government, substantial evidence to support the jury's verdict exists. *United States v. Wesley*, 798 F.2d 1155, 1157 (8th Cir.1986). All permissible inferences which may reasonably be drawn from the evidence must be construed in the government's favor. *United States v. Casperson*, 773 F.2d 216, 221 (8th Cir.1985). Decisions regarding credibility of witnesses are to be resolved in favor of the jury's verdict, *United States v. Smith*, 700 F.2d 627, 632 (11th Cir.1983), and reversal is warranted only if a reasonable jury could not have found Defendant guilty beyond a reasonable doubt. *Smalley v. State*, 798 F.2d 1182, 1188 (8th Cir.1986).

■ The evidence considered in the light most favorable to the government supports the jury's verdict finding the Defendant guilty. Amo identified Defendant as the person who assaulted him late on April 5, 1991 or early April 6, 1991, which was the same day Amo signed a "proffer" letter to provide information to law enforcement.

Tony and Barb Allen's testimony corroborated Amo's. Defendant's intent in committing the assault is supported by Amo's testimony about a threat made by Defendant in March of 1990, that he would "blow Amo's head off if something happened to him." [3] Jo Lenox, who lived with the Defendant from December of 1990 to March of 1991, testified that the Defendant identified various people as "narcs." Viewing the evidence in the light most favorable to the verdict, the district court properly denied the motion for judgment of acquittal on sufficiency of the evidence.

## IV. PLAIN ERROR BASED ON DEFENDANT'S LACK OF ACCESS TO AMO'S FINANCIAL STATEMENT

■ Although Defendant asserts reversible error because the government failed to disclose Amo's completed financial statement to the defense, the record does not reveal that the Defendant made any specific claim for relief based upon the lack of access to Amo's financial statement. The Defendant was aware that the United States did not have in its possession the completed financial statement based upon the Defendant's direct examination of Charles Nadler, Amo's attorney. Because the Defendant failed to object to the lack of the financial statement during his cross examination, this claim will be reviewed for plain error, resulting in a miscarriage of justice. Fed.R.Crim.P. 52(b); *United States v. Meeks*, 857 F.2d 1201, 1203 (8th Cir.1988).

The financial statement in question was returned to the U.S. Attorney's Office, and the Defendant never requested remedial action during trial.[4] No Jencks Act violation occurred, and no plain error was com-

---

3. The threat occurred after February of 1990, when Amo said that his shotgun was missing after a drug deal with Defendant at Amo's house, and shortly after law enforcement officers approached Amo with a plea agreement. This ties in with the Defendant's comment to Amo at T.A.'s Lounge just prior to assaulting him that he had heard Amo was afraid that the Defendant was going to shoot him with his own gun.

4. In addition, there is an issue as to whether this financial statement is even a "statement" for the purposes of Title 18, U.S.C. § 3500(e), because any contents would not "relate to the subject matter of the testimony of the witness," *United States v. Minkin*, 504 F.2d 350 (8th Cir.1974) *cert. denied*, 420 U.S. 926, 95 S.Ct. 1122, 43 L.Ed.2d 396 (1975).

mitted which could result in a miscarriage of justice.

## V. WHETHER THE DISTRICT COURT PROPERLY DENIED THE MOTION FOR NEW TRIAL BASED UPON THE PROSECUTOR'S COMMENT DURING CLOSING ARGUMENT

■ Defendant claims that a new trial is warranted, based upon a comment by the Assistant U.S. Attorney during closing argument. The district court denied the motion for new trial. This Court's October 28, 1991, Order found that Defendant was not prejudiced by the prosecutor's remark, noting that the jury was instructed to disregard that remark. Whether to grant a motion for new trial is committed to the broad discretion of the trial court, and the trial court's decision will not be disturbed absent a showing of an abuse of discretion. *United States v. Copple*, 827 F.2d 1182, 1191 (8th Cir.1987) *cert. denied*, 484 U.S. 1073, 108 S.Ct. 1046, 98 L.Ed.2d 1009 (1988).

The Assistant U.S. Attorney's comments, which Defendant found objectionable, are as follows:

> GOVERNMENT'S COUNSEL: We don't expect you to approve of that conduct or like that kind of behavior. I'm certain that Mr. Amo is not particularly proud of it either, but in connection with his admitted drug trafficking and his admitted misconduct for a period of years, we would ask you to consider, members of the jury, how it is that you prove a drug case, how it is that you prove that someone is involved in drugs—
>
> DEFENDANT'S COUNSEL: Your Honor, I'm going to object. This is not a drug case. That is outside of the scope of the record.
>
> THE COURT: That will be sustained. You may continue your argument.
>
> GOVERNMENT'S COUNSEL: We would ask you to compare how the government gets information on drug offenses to, for example, how the government gets information on a bank robbery. A bank robbery, someone goes into a bank, a public place where there

are customers and tellers, and they rob it, and there are witnesses. We would ask you to consider who are the witnesses for drug offenses? Drug transactions take place behind closed doors in secret—

> DEFENSE COUNSEL: Your Honor. I hate to interrupt again, but I am going to make the same objection for the same reasons.
>
> THE COURT: It's overruled now.
>
> GOVERNMENT'S COUNSEL: As I said, in a secret, behind closed doors, the only way that the government can get information about drug activity are through those that know, through those that have been there, and even though Mr. Amo's behavior is certainly not approved or liked, it is that knowledge, that personal knowledge, that must be protected. It is the system which allows the government to investigate those cases. It is a system which requires the protection of those citizens, no matter who they are, who come forward to tell the truth.

■ The test for reversible prosecutorial conduct has two parts:

(1) the prosecutor's remarks or conduct must in fact have been improper; and

(2) such remarks or conduct must have prejudicially affected the defendant's substantial rights so as to deprive the defendant of a fair trial.

*United States v. Hernandez*, 779 F.2d 456, 458 (8th Cir.1985).

■ Apparently, the district court found an initial reference to a "drug case" improper, inasmuch as this is not a *per se* drug case. Immediately thereafter the Assistant U.S. Attorney continued to comment on how drug offenses are investigated. Information relating to Title I, Drug Offenses, is part of one of the elements of the offenses charged under Title 18, U.S.C. § 1512(b). The comments were proper in light of the fact that the Defendant intended to hinder, delay or prevent Amo from disclosing information related to drug of-

 

fenses.[5]

The district court did not abuse its discretion in denying the motion for new trial based upon alleged prosecutorial misconduct.

## VI. APPLICATION OF AN EIGHT LEVEL INCREASE FOR CAUSING PHYSICAL INJURY PURSUANT TO U.S.S.G.C. § 2J1.2(b)(1)

Defendant claims that the government failed to show by a preponderance of the evidence that the assault on Amo caused physical injury. The district court approved the eight level upward adjustment to Defendant's base offense level, finding "... that it was the Defendant who committed the act as the jury has found beyond a reasonable doubt and that physical injury was caused to Mr. Amo ..." The district court's decision that the government provided sufficient evidence that the assault committed by Schnurstein caused physical injury, is a factual finding subject to the clearly erroneous standard of review. *United States v. Johnson*, 925 F.2d 1115, 1117–18 (8th Cir.1991). Application note 1(b) to U.S.S.G. § 1B1.1 defines bodily injury as "injury that is painful and obvious, or is of a type for which medical attention ordinarily would be sought." It is clear that Amo suffered bodily injury, inasmuch as Amo went to the hospital and spent time at the hospital to assess the nature and character and extent of injuries suffered. The district court did not clearly err when applying the eight level upward adjustment under U.S.S.G.C. § 2J1.2(b)(1) for the physical injury cause.[6]

## VII. CONCLUSION

The decisions of the district court and the sentence imposed are hereby AFFIRMED in their entirety.

---

**5.** Even if this comment was construed as being improper, the comment did not serve to deny the defendant a fair trial, considering that it was an isolated comment in a two-day trial. The evidence against the Defendant was strong and any prejudicial impact suffered by Defendant was cured by the actions of the district court in sustaining the objection and instructing the jury that arguments by lawyers are not evidence and that testimony stricken from the record is not to be considered in any manner. *United States v. Culver*, 929 F.2d 389, 391 (8th Cir.1991), citing *Hernandez*, 779 F.2d at 458.

**6.** Additionally, this is the first time Defendant has asserted that insufficient evidence of physical injury was shown. The Defendant is not permitted for the first time on appeal to assert a separate ground for his objection that he not only failed to preserve but he also specifically rejected as a basis for his objection below. *United States v. Roenigk*, 810 F.2d 809, 815 (8th Cir.1987).