No. 95-3513

United States of America,     *
     *
     Appellee,     *
     * Appeal from the United States
     v.     * District Court for the
     * Western District of Missouri
Scotty Joe Uder,  *
     *
     Appellant.     *

Submitted:  March 15, 1996

Filed:  October 18, 1996

Before McMILLIAN, BEAM and HANSEN, Circuit Judges.

McMILLIAN, Circuit Judge.

Scotty Joe Uder appeals from a final judgment entered in the United States District Court[1] for the Western District of Missouri, upon a jury verdict finding him guilty on one count of conducting operations in a chop shop, in violation of 18 U.S.C. § 2322(a)(1). The district court sentenced Uder to twenty-one months imprisonment, three years supervised release, and special assessment of $50.00. For reversal, Uder argues that the district court (1) erred in informing the jury that some of the government witnesses had pled guilty; (2) erred in denying his motion for judgment of acquittal based upon insufficiency of the evidence; (3) committed plain error in failing to enter judgment of acquittal based upon a double jeopardy violation; (4) clearly erred in finding that Uder's role in the offense was not minor under

---

[1]The Honorable Russell G. Clark, United States District Judge for the Western District of Missouri.

U.S.S.G. § 3B1.2; (5) abused its discretion by failing to depart downward based upon an overstated criminal history under U.S.S.G. § 4A1.3; and (6) abused its discretion by failing to depart downward based upon extraordinary physical impairment under U.S.S.G. § 5H1.4. For the reasons discussed below, we affirm.

## Background

On October 20, 1994, Uder, along with seven other individuals, was charged in an eight-count indictment. Uder was charged in two of the counts, one alleging that he and his co-defendants knowingly operated a chop shop in violation of 18 U.S.C. § 2322(a)(1),[2] (b),[3]

---

[2]Subsection 2322(a)(1) provides in pertinent part:

**(a) In general.--**

**(1) Unlawful action.** Any person who knowingly owns, operates, maintains, or controls a chop shop or conducts operations in a chop shop shall be punished by a fine under this title or by imprisonment for not more than 15 years, or both.

[3]Subsection 2322(b) provides:

**(b) Definition.** For purposes of this section, the term "chop shop" means any building, lot, facility, or other structure or premise where one or more persons engage in receiving, concealing, destroying, disassembling, dismantling, reassembling, or storing any passenger motor vehicle or passenger motor vehicle part which has been unlawfully obtained in order to alter, counterfeit, deface, destroy, disguise, falsify, forge, obliterate, or remove the identity, including the vehicle identification number or derivative thereof, of such vehicle or vehicle part and to

and the other alleging that he and four of his co-defendants knowingly tampered with and altered the vehicle identification number on a stolen car, in violation of 18 U.S.C. § 511. By the time of trial on July 19, 1995, all of Uder's co-defendants had entered into plea or cooperation agreements with the government, and Uder was the only defendant left to stand trial.

The government called ten witnesses for its case in chief, including several of Uder's former co-defendants. According to the government witnesses, Uder worked at an auto body shop in Fair Grove, Missouri, which operated under the name Heavy Truck and Car Sales and was owned and operated by an individual named Lloyd Dale Hightower. In November of 1993, Hightower was serving time in a federal prison for possession of methamphetamine with intent to distribute and conspiracy to transport stolen cars. Nevertheless, Hightower was able to direct illegal operations and related activities at the shop through an associate, Robert Moon, and Hightower's wife, Margaret Eaves (formerly Margaret Hightower), who lived next door to the shop. Hightower would allegedly purchase a salvaged vehicle at minimal cost, have the car cut up for parts while keeping the frame, then have the body of a stolen car assembled on the frame of the salvaged car, and have the vehicle identification number plates from the salvaged car switched to the stolen car. He would then sell the rebuilt car at a substantial profit. (This practice is referred to as "body swinging" or "swinging.") The government's evidence indicated that during the winter of 1993-1994, as part of Hightower's operation, a salvaged 1993 Suburban was legitimately purchased in Louisiana. The 1993 Suburban was cut up for parts at Hightower's shop and the frame salvaged. Then, a stolen 1994 Suburban was rebuilt on the salvaged frame and was retagged to bear the vehicle identification number and other identifying parts from the 1993 model.

One of the government witnesses, Mike Willis, testified that he worked at Hightower's shop but did legitimate body work. He

---

distribute, sell, or dispose of such vehicle or vehicle part in interstate or foreign commerce.

-3-

testified that, on January 1, 1994, he was visiting in Eaves' home. Based upon his observations and what he heard, he became suspicious of the activities that were taking place next door at the shop. The next day he left a message with FBI agent Al Stiffler to report that a "swing" of a Suburban was in progress at Hightower's shop. Willis implicated Hightower, Eaves, and Moon, and testified that a man referred to as "Robert" was apparently also involved in the "swing." The following day, Willis saw Stiffler and a state patrol officer at the shop.

Moon, who had originally been charged in the indictment, testified under a plea agreement that during 1993 and 1994 he was in the business of stealing cars for chop shops, including Hightower's. He testified that, in October or November of 1993 (before Hightower's incarceration), he saw Hightower obtain the 1993 Suburban and he saw the car chopped up and the vehicle identification number being saved. The frame and engine were taken to an auto frame shop owned by Chris Brown, in Lebanon, Missouri, to have the frame straightened. After Hightower was incarcerated, he allegedly agreed to pay Moon $2,000.00 to steal a Suburban and change the bodies before selling it. Moon further testified that he and Charles Berry Roberson (apparently the person whom Willis heard referred to as "Robert") stole the 1994 Suburban. Moon then hired Mat Lowrance and Uder (who were associated with another auto body chop shop called Auto Mart, which was owned by Kenny Smith), to do the body work on the Suburbans for $600 each. The salvaged frame was brought to Hightower's shop from Lebanon. Over the course of January 1 and January 2, 1994, Uder and Lowrance completed the body work for the "swing," with the exception of a broken distributor that needed replacing, and transferred the vehicle identification number and other identifying plates to the newly rebuilt car. The next day, January 3, 1994, Uder and Lowrance were returning to fix the broken distributor when they were waved off as they approached Hightower's shop, apparently because the police were there. They, in turn, also waved off Moon

as he approached the shop.  Consequently, Uder and Lowrance did not replace the broken distributor as planned.  That evening, Lowrance, Uder, and Moon allegedly met at the Auto Mart in Lebanon, Missouri.  Kenny Smith and one of his employees, Frank Rodden, were also present.  Afterward, Uder allegedly removed from Hightower's shop some of the parts that had been taken out of the interior of the salvaged Suburban, and he delivered those parts to Kenny Smith, who had bought them from Eaves.

Other witnesses testifying for the government under a plea agreement or a grant of immunity were Roberson (who had allegedly helped steal the 1994 Suburban), Lowrance (who, with Uder, allegedly did the body work for the "swing"), Rodden (an employee of Kenny Smith at the Auto Mart), and Eaves (Hightower's wife).  They generally corroborated the story told by Moon.  The government also called as trial witnesses the owner of the stolen 1994 Suburban, law enforcement officers who were involved in the investigation (including FBI agent Stiffler), and an expert who testified about how chop shops operate.

After the government rested, Uder moved for a directed verdict or judgment of acquittal on grounds of insufficiency of the evidence.  The motion was denied.  Uder rested without presenting any further evidence. Uder timely objected to several of the jury instructions given by the district court, including Instruction No. 13.  The case was then submitted to the jury following closing arguments.  The jury found Uder guilty of knowingly operating a chop shop and not guilty of knowingly tampering with or altering a vehicle identification number.

The presentence investigation report (PSR) determined that Uder's total offense level was 14, his criminal history category III (based upon 5 criminal history points), and the relevant amount of loss between $20,000 and $40,000 (representing the retail value of the stolen 1994 Suburban). Uder filed objections to the PSR,

seeking a downward adjustment for minor role in the offense (U.S.S.G. § 3B1.2); a downward departure on grounds that his criminal history was overstated (U.S.S.G. § 4A1.3); and a downward departure on grounds that his cystic fibrosis constituted an extraordinary physical impairment (U.S.S.G. § 5H1.4). The district court rejected Uder's objections and adopted the recommendations in the PSR. Uder was sentenced to twenty-one months imprisonment, three years supervised release, and a $50.00 special assessment. Uder appealed.

## Discussion

### Jury instruction referring to witnesses' guilty pleas

Uder argues on appeal that the district court erred in giving the following Instruction No. 13:

> You have heard evidence that Robert Moon, Charles Barry Roberson, Frank Rodden, and Matthew Lowrance have made plea agreements with the government and that Margaret Eaves has received a promise from the government that her testimony will not be used against her in a criminal case. Their testimony was received in evidence and may be considered by you. You may give their testimony such weight as you think it deserves. Whether or not their individual testimony may have been influenced by the plea agreements or the government's promise is for you to determine.
>
> Each of these witnesses' guilty pleas cannot be considered by you as any evidence of this defendant's guilt. The individual witness's guilty plea or promise from the government can be considered by you only for the purpose of determining how much, if at all, to rely upon the individual witness's testimony.

Uder tendered, as an alternative instruction, his proposed Instruction A, which stated:

> You have heard testimony from Robert Moon, Charles Barry Roberson and Matthew Lowrance who stated that they

participated in the crime charged against defendant. Their testimony was received in evidence and may be considered by you. You may give their testimony such weight as you think it deserves. Whether or not such testimony may have been influenced by their desire to please the government or strike a good bargain with the government about his own situation is for you to determine.

On appeal, Uder asserts that the question for this court is whether the challenged jury instruction represents a complete statement of the law and is supported by the evidence. Brief for Appellant at 19. However, we note that the substance of Uder's objection to Instruction No. 13 is not that the instruction was an incomplete or incorrect statement of the law. Rather, Uder argues that, by giving Instruction No. 13, the district court allowed the prosecution to "bolster" its witnesses because the instruction unduly emphasized the fact that the witnesses had already pled guilty. Id. at 20. Uder contends that this information was particularly damaging because it was delivered by the trial judge through the jury instructions; therefore, he argues, the conviction should be reversed. Id.

In response, the government argues that it was within the sound discretion of the district court to remove from the jury any consideration of the witnesses' guilty pleas as substantive evidence, and therefore Instruction No. 13 was proper. Even if the instruction was not properly given, the government argues, the error was harmless under the applicable standard set forth in Rule 52(a) of the Federal Rules of Criminal Procedure. United States v. Ryan, 41 F.3d 361, 366 (8th Cir. 1994) (en banc) (properly objected to jury instructions are analyzed under the harmless error standard in Rule 52(a)) (citing United States v. Voss, 787 F.2d 393, 398 (8th Cir.), cert. denied, 479 U.S. 888 (1986)), cert. denied, 115 S. Ct. 1793 (1995).

Upon review, we hold that the district court properly instructed the jury that they could consider the witnesses' guilty pleas for the purpose of determining the weight to afford those witnesses' testimony, but not as substantive evidence of Uder's guilt.  In United States v. Kroh, this court explained that "[i]n the Eighth Circuit, the law is clear that `a confederate's guilty plea is admissible, *even on the Government's direct examination of the witness*, as evidence of the witness's credibility, or of his [or her] acknowledgement of participation in the offense.'"  915 F.2d 326, 331 (8th Cir. 1990) (en banc) (quoting United States v. Hutchings, 751 F.2d 230, 237 (8th Cir. 1984), cert. denied, 474 U.S. 829 (1985)) (emphasis in original).  This court then stated "[t]he witness's plea or evidence thereof, however, 'cannot be used as substantive evidence of the defendant's guilt,' and *the jury should be so instructed.*"  Kroh, 915 F.2d at 331 (quoting Hutchings, 751 F.2d at 237) (emphasis added).  See also United States v. Willis, 997 F.2d 407, 414 (8th Cir. 1993) (same), cert. denied, 510 U.S. 1050 (1994); United States v. Misle Bus & Equip. Co., 967 F.2d 1227, 1233 (8th Cir. 1992) (same).

United States v. Stevens, 918 F.2d 1383, 1385 (8th Cir. 1990), is also instructive.  In Stevens, the defendant challenged a jury instruction which was almost identical to the instruction at issue in the present case.  Rather than object to the admission of evidence indicating that a government witness had pled guilty, the defendant in Stevens challenged the district court's instruction which cautioned the jury only to consider the guilty plea in relation to the weight to be afforded the witness's testimony, not as substantive evidence of the defendant's guilt.  Id.  The jury instruction in Stevens stated in pertinent part:

> In deciding what the facts are, you may have to decide what testimony you believe and what testimony you do not believe.  You may believe all of what a witness said, or only part of it, or none of it.

. . . .

You have heard evidence that one of the government's witnesses has pleaded guilty to a crime which arose out of the same events for which the defendant is on trial here. That guilty plea cannot be considered by you as evidence of the defendant's guilt. The witness's guilty plea can be considered by you only for the purpose of determining how much, if at all, to rely upon that witness's testimony.

Likewise, you have heard evidence that some of the witnesses have made plea agreements with the government. You may give the testimony of those witnesses such weight as you think it deserves. Whether or not their testimony may have been influenced by their plea agreements is for you alone to determine.

Id. The defendant in Stevens argued that the district court should have additionally stated that such testimony "should be considered with greater caution and care than that of an ordinary witness." Id. Upon review, we first explained that "[a] district court has wide discretion in formulating appropriate jury instructions, and we evaluate the adequacy of the instructions by reviewing them as a whole." Id. (citing United States v. McQuarry, 726 F.2d 401, 402 (8th Cir. 1984)). We then went on to hold that the district court had "adequately called to the jury's attention the factors which may have affected [the witness's] credibility." Id. We thus concluded that the district court did not abuse its discretion in refusing to modify its instruction in the manner requested by the defendant. Id.

In the present case, we review the district court's formulation of Instruction No. 13 for an abuse of discretion. At the time the district court gave Instruction No. 13, the jury had already heard testimony regarding the guilty pleas and plea agreements of some of the government witnesses. Under these circumstances, it was appropriate for the district court to give a specific instruction regarding the proper limitations on the jury's consideration of that evidence. Indeed, notwithstanding Uder's

proposed alternative Instruction A, we think the district court would have erred had it failed to instruct the jury that the witnesses' guilty pleas could not be considered as evidence of Uder's guilt. We therefore hold that the district court certainly did not abuse its discretion.

Sufficiency of the evidence

Uder also argues that the evidence was insufficient as a matter of law to support the jury's guilty verdict on the count charging him with conducting operations in a chop shop, in violation of 18 U.S.C. § 2322(a)(1). Uder contends that the government's evidence was insufficient because it failed to establish that he knew that the 1994 Suburban was stolen or otherwise unlawfully obtained. Uder maintains that this was an element of the government's burden of proof, based upon the definition of "chop shop" contained in 18 U.S.C. § 2322(b). Uder argues "there is no direct evidence that [he] knew the vehicle was stolen," and "[t]here is conflicting evidence from which inferences might be drawn which is [sic] as consistent with innocence as guilt." Brief for Appellant at 13-14.

In response, the government argues that it was only required to prove that Uder acted knowingly in conducting operations of the chop shop, not that he had specific knowledge of the facts which made the chop shop fall within the statutory definition. On this point, the government compares 18 U.S.C. § 2322 to 18 U.S.C. § 1955(a) (the federal illegal gambling business law). For example, the government contends, the mere "wrench man" is criminally responsible for a chop shop's operations even though he may not personally know the unlawful origin of a particular vehicle or the intended disposition of the vehicle. In the alternative, the government argues that, even if it were required to prove Uder's knowledge that the 1994 Suburban was stolen, there was ample evidence supporting such an inference.

-10-

Although we do not necessarily agree with the government's assertion that "[a]ny degree of participation in a chop shop, other than as customer, should be within the 'conduct' provision of § 2322(a)," Brief for Appellee at 32, we conclude that the evidence of intent was sufficient to support the jury's verdict in the present case. Because we hold that the evidence overwhelmingly supported a finding of guilty knowledge under any reasonable interpretation of the jury instruction setting forth the elements of the offense[4] (which Uder has not challenged), we find it unnecessary at this time to define the exact scope of the intent element of 18 U.S.C. § 2322(a)(1).

In reviewing a challenge for sufficiency of the evidence, we view the evidence in the light most favorable to the government, giving it the benefit of all reasonable inferences that support the jury verdict. United States v. Robaina, 39 F.3d 858, 863 (8th Cir. 1994). The verdict must be upheld if there is an interpretation of the evidence that would allow a reasonable jury to conclude guilt beyond a reasonable doubt. Id. Decisions regarding the

---

[4]The district court instructed the jury that the government had the burden to prove beyond a reasonable doubt that: "One, the defendant, during the period alleged, conducted operations in a chop shop; and, Two, the defendant did so knowingly." Appendix at 5 (Instruction No. 14). The district court further instructed the jury that

> the term 'chop shop' means any building, lot, facility, or other structure or premise where one or more persons engage in receiving, concealing, destroying, disassembling, dismantling, reassembling, or storing any passenger motor vehicle or passenger motor vehicle part which has been unlawfully obtained in order to alter, counterfeit, deface, destroy, disguise, falsify, forge, obliterate, or remove the identity, including the vehicle identification number or derivative thereof, of such vehicle or vehicle part and to distribute, sell, or dispose of such vehicle or vehicle part in interstate or foreign commerce.

Id. at 6 (Instruction No. 15).

-11-

credibility of witnesses are to be resolved in favor of the jury's verdict. United States v. Schnurstein, 977 F.2d 449, 453 (8th Cir. 1992). With these standards in mind, we hold that the evidence in the present case was more than legally sufficient to prove that Uder knew the work being done in Hightower's shop, in which he participated, involved the alteration of a motor vehicle which had been unlawfully obtained. In fact, the reasonable inferences to be drawn from the testimony of several of the government witnesses, including Moon and Lowrence, for example, were more than legally sufficient to support the conclusion that Uder knew the 1994 Suburban had been stolen. Therefore, we hold that the district court did not err in denying Uder's motion for directed verdict or judgment of acquittal.

Double jeopardy claim

Uder separately argues that the government's case against him violated his double jeopardy rights because one count on which he was indicted, the vehicle identification number tampering count, required proof of conduct that satisfied the other count on which he was indicted, the chop shop count. Where, as here, two such counts involve the same vehicle and the same alleged conduct, Uder argues, double jeopardy rights are implicated. In response, the government first notes that this issue was not preserved below and, thus, review is for plain error. On the merits, the government argues that Uder's rights were not violated under any double jeopardy standard, including the Blockburger[5] test. We agree.

In the present case, Uder was charged under 18 U.S.C. § 511, for altering the vehicle identification numbers on a stolen car, and under 18 U.S.C. § 2322(a)(1), for knowingly conducting operations in a chop shop. Although the two counts were generally based upon the same conduct, the violation charged under § 511 was

_____

[5]Blockberger v. United States, 284 U.S. 299 (1932).

not a lesser included offense of the violation charged under § 2322.  The § 511 count charged Uder with altering or removing a vehicle identification number, whereas the § 2322 count charged him with acting to alter, destroy, remove, etc., the *identity* (which may have involved, but did not necessarily involve, the vehicle identification number) of a passenger motor vehicle or motor vehicle part for the purpose of disguising, etc., the vehicle or part.  Moreover, under the Blockburger test, each charged offense included an element that the other did not.  The charged § 2322 violation required a purposeful effort to disguise a vehicle, which the § 511 violation did not.  The charged § 511 violation required actual alteration or removal of a vehicle identification number, which the § 2322 violation did not.  We therefore hold that no double jeopardy violation occurred.  It follows that there was no plain error.

Minor role in the offense

Uder also argues that the district court erred in failing to give him a two-level sentencing reduction on the ground that he was a minor participant within the meaning of U.S.S.G. § 3B1.2.  Uder concedes that the district court properly limited its factual considerations to the unlawful activities involved in the Suburban "swing."  He argues, however, that his role in that process as a whole was minor because it was limited to doing only some of the body work.  He points out that he did not steal the 1994 Suburban, nor would he have been involved in the resale of the reassembled vehicle.

We review for clear error the district court's finding that Uder was not a minor participant under § 3B1.2.  We agree with the district court that he was not less culpable than most of the other participants who were involved in the "swing."  Uder and Lowrance spent two days reassembling the body of the stolen 1994 Surburban on the salvaged frame of the 1993 Suburban.  In our opinion, it is

fair to say that he was at least an average participant with respect to the Suburban "swing." Cf. United States v. Shaw, 94 F.3d 438, 443-44 (8th Cir. 1996) (where defendants were convicted on one count of using the telephone to commit drug-related offenses, but not for the larger drug-related conspiracy, the district court did not clearly err in denying them a § 3B1.2 reduction; even though they may have been minor participants in drug-related conspiracy, they were "average" rather than minor participants in the illegal telephone use); see also United States v. Miller, 56 F.3d 719, 720-21 (6th Cir. 1995) (where defendant had pled guilty to conspiracy to operate a chop shop under 18 U.S.C. § 2322(a) and other related vehicle crimes, the district court did not clearly err in finding that defendant was not a minor participant under U.S.S.G. § 3B1.2, even though defendant's role was limited to assisting in dismantling vehicles). We therefore hold that the district court's finding was not clearly erroneous.[6]

---

[6]We note that the government has cited United States v. Lucht, 18 F.3d 541, 555-56 (8th Cir.), cert. denied, 115 S. Ct. 363 (1994), for the general proposition that "[a] defendant is not entitled to reduction of sentence pursuant to U.S.S.G. § 3B1.2 on the grounds that he played a minor or minimal role in a greater offense, where the greater offense is not taken into account in setting the base offense level." Brief for Appellee at 43. We caution that Lucht's reference to the *base offense level* must be read in the context of that case. Lucht involved a drug offense and, therefore, under U.S.S.G. § 2D1.1, the base offense level specifically incorporated a drug quantity determination. By contrast, in the present case, Uder's base offense level would have been 8 pursuant to U.S.S.G. § 2B6.1(a), regardless of the value of the loss taken into account for sentencing purposes. The amount of loss in the present case affected Uder's *specific offense characteristics*, not his base offense level. Under the applicable guideline provisions, the district court was required to make a finding as to the retail value of vehicles or parts involved in the offense, which could have resulted in an increase ranging from 0 to 18 levels. U.S.S.G. § 2B6.1(b)(1) (specific offense characteristics incorporating increases set forth in U.S.S.G. § 2F1.1). Depending on the nature of the offense and the applicable guideline provisions, the courts may in some instances look to factors other than those affecting the base offense level -- such as the factors affecting the specific offense characteristics -- to decide whether a reduction under § 3B1.2 applies. In other words, if, in the present case, the district court had increased Uder's offense level under § 2B6.1(b)(1) on the basis of all the vehicles and parts

-14-

Downward departure issues

Finally, Uder argues that the district court abused its discretion at sentencing by failing to depart downward based upon an overstated criminal history under U.S.S.G. § 4A1.3, and it further abused its discretion by failing to depart downward based upon extraordinary physical impairment under U.S.S.G. § 5H1.4.  As to both of these issues, we note that the district court was aware of its authority to grant a downward departure, but declined to do so.  Under these circumstances, we lack authority to review the district court's exercise of its discretion not to depart.  See United States v. Hall, 7 F.3d 1394, 1396 (8th Cir. 1993) (where district court was aware of its authority to depart, appellate court lacks authority to review district court's exercise of discretion not to depart downward under § 4A1.3); United States v. Fischl, 16 F.3d 927, 929 (8th Cir. 1994) (where district court was aware of its authority to depart, appellate court lacks authority to review district court's exercise of discretion not to depart downward under § 5H1.4).

---

involved in Hightower's entire chop shop scheme, we think that Uder's role in that larger scheme would frame the relevant inquiry for purposes of applying § 3B1.2.  However, the district court's specific offense characteristic determinations were as follows: Uder received a four-level increase under § 2B6.1(b)(1) on the basis of the retail value of the stolen 1994 Suburban only; Uder did not receive a two-level increase under § 2B6.1(b)(2) for being in the business of receiving and selling stolen property; and Uder's offense level was increased to 14 under § 2B6.1(b)(3) because the "swing" involved an organized scheme to steal vehicles or vehicle parts.  Therefore, the relevant aspects of Uder's guidelines calculation were solely based upon those operations related to the "swing" of the Suburbans, which confirms our conclusion that the district court correctly applied § 3B1.2, notwithstanding the legal distinction we have drawn between this case and Lucht.

**Conclusion**

For the foregoing reasons, the judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.