887 So.2d 1186 (2004)
STATE of Florida, Appellant,
v.
James OTTE, Appellee.
No. SC03-330.
Supreme Court of Florida.
October 7, 2004.
Charles J. Crist, Jr., Attorney General, Belle B. Schumann and Killie A. Nielan, Assistant Attorney General, Daytona Beach, FL, for Appellant.
Gerard F. Keating, Daytona Beach, FL, for Appellee.
CANTERO, J.
In this case, we decide whether a Florida statute that authorizes wiretaps for the investigation of certain crimes conforms to a federal statute that also authorizes wiretaps, but only in certain circumstances. The federal statute preempts any state *1187 laws concerning wiretaps, although states may enact more restrictive provisions.
The State appeals State v. Fratello, 835 So.2d 312 (Fla. 5th DCA 2002),[1] in which the district court declared invalid section 934.07, Florida Statutes (1999), to the extent that it authorizes law enforcement officials to intercept communications related to prostitution. Our jurisdiction is mandatory. See art. V, § 3(b)(1), Fla. Const. The precise question we must address is whether violations of Florida's Racketeer Influenced and Corrupt Organization (RICO) statute, § 895.03, Fla. Stat. (1999), constitute crimes "dangerous to life, limb, or property" under 18 U.S.C. § 2516(2) when the predicate acts are related to prostitution. As explained below, we hold that violations of the Florida RICO statute do constitute crimes "dangerous to life, limb, or property," and therefore section 934.07's authorization of wiretaps for such crimes is consistent with the federal statute.

I. The Facts of the Case
The State filed an information alleging that appellee James Otte was employed by or associated with a business named Elegant Encounters, an escort service that provided prostitution services. It charged Otte with racketeering and conspiracy to commit racketeering in violation of Florida's RICO statute, § 895.03(3)-(4), Fla. Stat. (1999), and with deriving support from prostitution in violation of section 796.05, Florida Statutes (1999). The State obtained an order authorizing a wiretap on a telephone in Otte's home. The order was based on the State's allegation, and the court's finding, that probable cause existed to believe Otte was engaging in racketeering and money laundering in violation of Florida's RICO statute through his management and direction of prostitutes and their clients. Fratello, 835 So.2d at 313. Otte filed a motion to suppress evidence, contending that the wiretap order was illegal. The trial court granted the motion. On appeal, the Fifth District Court of Appeal affirmed, holding that the wiretap was not authorized under federal law. Id. at 316.

II. Federal and State Wiretap Authorization
The issue in this case is the validity of part of the Florida wiretap statute, § 934.07, Fla. Stat. (1999), under the federal wiretap statute, 18 U.S.C. § 2516 (2000). The federal statute specifies that wiretaps may be authorized
when such interception may provide or has provided evidence of the commission of the offense of murder, kidnapping, gambling, robbery, bribery, extortion, or dealing in narcotic drugs, marihuana or other dangerous drugs, or other crime dangerous to life, limb, or property, and punishable by imprisonment for more than one year, designated in any applicable State statute authorizing such interception, or any conspiracy to commit any of the foregoing offenses.
Id. (emphasis added). Therefore, the statute authorizes wiretaps to investigate certain enumerated offenses, as well as other, unspecified offenses that are dangerous to life, limb, or property and punishable by imprisonment for more than one year.
The federal wiretap statute preempts the field of wiretapping and electronic surveillance and limits a state's authority to legislate in this area. State v. Rivers, 660 So.2d 1360, 1362 (Fla.1995). It *1188 allows states to adopt similar procedures authorizing state law enforcement personnel to intercept communications in a criminal investigation. 18 U.S.C. § 2516(2) (2000). Although states are free to adopt more restrictive statutes, they cannot adopt less restrictive ones. Rivers, 660 So.2d at 1362.
Section 934.07, Florida Statutes (1999), establishes the state procedures for authorizing the interception of communications. The statute permits a court to order a wiretap

when such interception may provide or has provided evidence of the commission of the offense of murder, kidnapping, arson, gambling, robbery, burglary, theft, dealing in stolen property, prostitution, criminal usury, bribery, or extortion; any violation of chapter 893; any violation of the provisions of the Florida Anti-Fencing Act; any violation of chapter 895 [RICO]; any violation of chapter 896 [money laundering]; ... or any conspiracy to commit any violation of the laws of this state relating to the crimes specifically enumerated above.
§ 934.07, Fla. Stat. (1999) (emphasis added).[2] While the Florida statute refers to both prostitution and Florida's RICO statute, the federal statute refers to neither.

III. The Use of Wiretaps to Investigate Prostitution-Related Offenses
We previously have held the Florida statute invalid in authorizing wiretaps to investigate prostitution because that crime is not identified in the federal statute and it is not a crime "dangerous to life, limb, or property." See Rivers, 660 So.2d at 1362. Now we must determine whether the authority in Florida's statute to use wiretaps to investigate RICO violations suffers from the same deficiency, at least as applied to RICO crimes (such as racketeering and money laundering) where the underlying offenses are related to prostitution. The issue presented is a pure question of law subject to de novo review. See State v. Glatzmayer, 789 So.2d 297, 302 n. 7 (Fla.2001) (noting that "[i]f the ruling consists of a pure question of law, the ruling is subject to de novo review").
In holding that the wiretaps were unauthorized under federal law because the underlying crimes were prostitution-related, the Fifth District Court of Appeal largely relied on our decision in Rivers. 835 So.2d at 316. Therefore, we analyze exactly what we determined in that case. In Rivers, law enforcement investigated an alleged prostitution ring. They obtained a wiretap to gather evidence of "ongoing violations of Chapter 796, Florida Statutes, prohibiting prostitution." 660 So.2d at 1361. Based on the information obtained through the wiretap, the State charged the defendants with prostitution-related offenses and RICO violations. 660 So.2d at 1361. We first noted that the wiretap was obtained based solely on allegations of prostitution-related offenses and that the *1189 "RICO charges only materialized after the State obtained evidence through intercepting communications pursuant to the wiretap order." 660 So.2d at 1361 (emphasis added). Although "[a]dditional offenses discovered during the course of a proper intercept may be prosecuted regardless of the nature of the offense or the prescribed punishment," we stated that "evidence of other crimes revealed as the result of an invalid wiretap cannot redeem an otherwise invalid authorization." Id. Thus, the subsequently charged RICO violations, which did not serve as the basis for the wiretap order, could not validate the wiretap.
We recognized in Rivers that the federal statute did not specify prostitution as one of the offenses for which a wiretap was authorized. The question, therefore, was whether the Florida statute's authorization of wiretaps to investigate prostitution  the crime alleged in the request for a wiretap  fell within the federal statute's general grant of authorization to investigate crimes "dangerous to life, limb, or property." 660 So.2d at 1361. We concluded that as long as the offense was nonviolent, "Congress did not intend to include prostitution in the `dangerous to life, limb or property' category" and explained as follows:
Under the statutory construction rule of ejusdem generis, the general category of other crimes "dangerous to life, limb, or property, and punishable by imprisonment for more than one year," must be construed as applying only to crimes of the same kind as those precisely stated in the statute. Thus, the "dangerous to life" general category refers only to those crimes that are "intrinsically serious" or characteristic of the operations of organized crime.
660 So.2d at 1362 (citations omitted). We further noted that "Congress specifically provided that the `dangerous to life' general category `is intended to exclude such offenses as fornication and adultery, which do not involve danger to life, limb, or property.'" 660 So.2d at 1363 (quoting S.Rep. No. 90-1097 (1968)).
In Rivers, we warned that if the prostitution-related offenses under investigation were alleged to involve either violence or the threat of violence, then Florida's statute would conform to the federal statute's restrictions. 660 So.2d at 1363. Also, because the RICO charges were added after the wiretap at issue, we did not consider the statute's authority to investigate RICO violations. Our holding was limited to the statute's authorization to issue wiretaps to investigate prostitution. Therefore, although our analysis in Rivers certainly informs our decision here, its holding does not resolve the markedly different issue presented.

IV. Wiretap, RICO, and Prostitution-Related Offenses
Unlike the order in Rivers, the wiretap order in this case was based on a judicial finding of probable cause to believe that the defendant was engaged in racketeering and money laundering activities in violation of Florida's RICO statute. That the predicate offenses of the RICO allegations were prostitution-related is not determinative; racketeering is a wholly separate crime from any underlying offenses. See § 895.03, Fla. Stat. (1999).
Otte contends that in obtaining the wiretap, the State had to allege that the offenses involved violence or the threat of violence or danger to life, limb, or property, and that without such a judicial finding, the wiretap was invalid.[3] In enacting *1190 Florida's RICO Act in 1977, however, the Florida Legislature based the need for the statute on its findings of the various economic and other harms visited by organized crime. In the preamble to the legislation, the Legislature found that "organized crime is a highly sophisticated, diversified, and widespread problem which annually drains billions of dollars from the national economy by various patterns of unlawful conduct, including the illegal use of force, fraud, and corruption," that its operatives use Florida's own laws governing business enterprises for unlawful purposes, and that its "corruption of legitimate business provide[s] an outlet for illegally obtained capital, harm[s] innocent investors, entrepreneurs, merchants, and consumers, interfere[s] with free competition, and thereby constitute[s] a substantial danger to the economic and general welfare of the State of Florida." Ch. 77-334, Laws of Fla. at 1400. These findings of the inherent dangers of organized crime squarely place RICO violations within the federal wiretap law's category of "crime dangerous to life, limb, or property."
As we noted in Rivers, the federal wiretap statute was intended to aid the investigation of "intrinsically serious" crimes and the operations of organized crime. The statute authorizes wiretaps to investigate alleged violations of the federal RICO law. See 18 U.S.C. § 2516(1)(c) (2000); 660 So.2d at 1362. Our Legislature, too, has recognized the need to use wiretaps in investigating organized crime:
Organized criminals make extensive use of wire and oral communications in their criminal activities. The interception of such communications to obtain evidence of the commission of crimes or to prevent their commission is an indispensable aid to law enforcement and the administration of justice.
§ 934.01(3), Fla. Stat. (1999). In light of the legislative findings and the purposes of both the federal and state wiretap provisions, we agree with the Pennsylvania Supreme Court, which, employing a similar analysis, concluded that the state is not required to make a separate showing of danger to life, limb, or property in its application to intercept communications in the investigation of alleged RICO violations. See Commonwealth v. Birdseye, 543 Pa. 251, 670 A.2d 1124, 1128 (1996). Thus, the Florida statute's authorization for a wiretap for the investigation of "any violation of chapter 895" does not contravene the federal statute.

V. Conclusion
We emphasize that our decision here is consistent with our prior decision in Rivers. The error of the courts below was in their focus on the nature of the crimes underlying the RICO allegations without regard for the separate character of the RICO offenses and the very purposes of both the federal and state wiretap provisions to fight organized crime. Accordingly, we hold that section 934.07's authorization for a judge to order the interception of communications to obtain evidence of "any violation of chapter 895" is valid and that to obtain such an order the State need not separately allege and demonstrate a danger to life, limb, or property.[4] We reverse the decision of the district court *1191 and remand for further proceedings consistent with this opinion.
It is so ordered.
PARIENTE, C.J., and WELLS, ANSTEAD, QUINCE and BELL, JJ., concur.
LEWIS, J., dissents.
NOTES
[1] The appeal below was taken by Diane Fratello and James Otte, the appellee here. Fratello, however, made no appearance in this appeal, and the issue is moot as to her because she "entered a plea in the underlying prosecution and was sentenced accordingly." Fratello, 835 So.2d at 313 n. 1.
[2] To obtain an order authorizing a communications intercept, the State must file a sworn application providing detailed information in accordance with the requirements of section 934.09(1), Florida Statutes (1999). A judge may issue such an order only upon finding probable cause to believe (1) that an individual is, has, or is about to commit an offense named in section 934.07; (2) that communications relevant to the offense will be obtained; (3) that normal investigative procedures have been tried and failed or reasonably appear unlikely to succeed or are too dangerous; and (4) that the place where the intercept will occur is being used in connection with the commission of the crime. 934.09(3), Fla. Stat. (1999). Under section 934.09(4), the authorizing order must be very specific.
[3] Otte also argues that the State's application for the wiretap order did not sufficiently allege his involvement in the offenses to justify the intercept as to him. This claim, however, is not at issue here, and we express no opinion about it.
[4] We emphasize, however, that "the target of RICO Act prosecutions will be appropriately, the professional or career criminal and not non-racketeers who have committed relatively minor crimes." Gross v. State, 765 So.2d 39, 46 n. 5 (Fla.2000) (quoting Bowden v. State, 402 So.2d 1173, 1174 (Fla.1981)).