GERBER, J.
 

 Henry Vargas (the “defendant”) appeals his convictions for dealing in stolen property, operating a chop shop, racketeering, and conspiracy to commit racketeering. The defendant argues that the state failed to prove his knowledge of illegal activity and, thus, the trial court erred in denying his motions for judgment of acquittal. We affirm, finding that the state presented sufficient evidence to prove the defendant’s knowledge.
 

 We summarize the state’s evidence as follows. In late 2003, undercover agents in the sheriffs auto theft task force met with the ringleaders of a suspected theft organization. The agents agreed to provide the ringleaders with a warehouse to use as a “chop shop” where stolen vehicles could be dismantled and loaded into shipping containers. By April, 2004, the ringleaders set up the warehouse for the chop shop’s operation. Meanwhile, the agents recorded the operation on video.
 

 Immediately after the chop shop began operating, one of the agents pushed the ringleaders to get some more workers. The next day, the defendant arrived at the warehouse and was recorded watching others dismantle vehicles. The following day, the defendant and others were recorded dismantling vehicles. Later that day, an agent noticed a marked police car parked outside. The agent told everyone to stop working and turned the lights off. After the police car left, everyone left the warehouse. Ten days later, the chop shop’s operation resumed. The defendant was not there that day, but returned on three of the next six days. The defendant and others were recorded dismantling vehicles, bringing in motorcycle parts, and loading shipping containers.
 

 One week later, the agents arrested everyone they believed was involved in the chop shop’s operation, including the defendant. The state ultimately charged eleven persons with a combination of twenty-seven counts. The state charged this defendant with four counts of dealing in stolen property (four motorcycles), operating a chop shop, racketeering, and conspiracy to commit racketeering. The state alleged that the offenses of dealing in stolen property and operating a chop shop served as the predicate offenses to charge the defendant with racketeering and conspiracy to commit racketeering.
 

 At the jury trial, after the state closed its case, the defendant made multiple motions for judgments of acquittal. On the
 
 *46
 
 counts for dealing in stolen property and operating a chop shop, the defendant argued, in sum, that the state failed to show he knew or should have known that the vehicles and motorcycle parts were stolen. On the racketeering and conspiracy counts, the defendant argued, in sum, that the state failed to show he knew of any criminal plan or organization, or that he joined in concert with others to promote a criminal organization. The trial court denied the motions.
 

 The jury convicted the defendant on all counts except for one of the counts of dealing in stolen property. After the trial court sentenced the defendant, this appeal followed. The defendant challenges the trial court’s denial of his motions for judgments of acquittal.
 

 The supreme court articulated our standard of review in
 
 Pagan v. State,
 
 830 So.2d 792 (Fla.2002):
 

 In reviewing a motion for judgment of acquittal, a de novo standard of review applies. Generally, an appellate court will not reverse a conviction which is supported by competent, substantial evidence. If, after viewing the evidence in the light most favorable to the State, a rational trier of fact could find the existence of the elements of the crime beyond a reasonable doubt, sufficient evidence exists to sustain a conviction.
 

 Id.
 
 at 803 (internal citations omitted). Applying that standard, we find sufficient evidence exists to sustain the defendant’s convictions. We will address the charges for dealing in stolen property and operating a chop shop before turning to the racketeering and conspiracy charges.
 

 Dealing in Stolen Property
 
 /
 
 Operating a Chop Shop
 

 According to the standard jury instruction for dealing in stolen property, which the trial court used in this case, the state had to prove: (1) the defendant trafficked in or endeavored to traffic in the motorcycle parts; and (2) the defendant
 
 knew or should have known
 
 that the motorcycle parts were stolen.
 
 See
 
 Fla. Std. Jury Instr. (Crim.) 14.2 (emphasis added);
 
 see also
 
 § 812.019(1), Fla. Stat. (2004) (“Any person who traffics in, or endeavors to traffic in, property that he or she
 
 knows or should know
 
 was stolen shall be guilty of a felony of the second degree ....”) (emphasis added). According to the statute on operating a chop shop, which the trial court used to craft a jury instruction in this case (because no standard instruction exists), the state had to prove the defendant knowingly owned, operated or conducted a chop shop, or
 
 knowingly aided and abetted
 
 another in operating, owning, or conducting a chop shop.
 
 See
 
 § 812.16(2), Fla. Stat. (2004) (emphasis added). A key component of the statutory definition of a “chop shop,” which the trial court read to the jury, is the existence of “stolen motor vehicles”:
 

 “Chop shop” means any area, building, storage lot, field, or other premises or place where one or more persons are engaged or have engaged in altering, dismantling, reassembling, or in any way concealing or disguising the identity of a
 
 stolen motor vehicle
 
 or of any major component part of a
 
 stolen motor vehicle;
 
 where there are two or more
 
 stolen motor vehicles
 
 present; or where there are major component parts from two or more
 
 stolen motor vehicles
 
 present.
 

 § 812.16(l)(a), Fla. Stat. (2004) (emphasis added).
 

 Sufficient evidence exists to show that the defendant knew the vehicles and motorcycle parts were stolen. The vehicles which the defendant dismantled had visible signs that they were stolen. One vehicle’s ignition had been tampered with so that it could be started without a key, and its front door handle had been tampered with so that an independent key
 
 *47
 
 could be used to open the door. Another vehicle’s ignition was popped off the steering column and had cellophane wrap covering the passenger side window. A third vehicle’s ignition was dismantled and was being started with a screwdriver. That vehicle’s door handle also had been tampered with to allow entry -without a key. After dismantling these obviously-tampered vehicles, the defendant loaded the vehicle parts and the motorcycle parts into shipping containers.
 

 The condition of the vehicles should have put the defendant on notice that the vehicles and motorcycle parts were stolen.
 
 See Periu v. State,
 
 490 So.2d 1327, 1329 (Fla. 3d DCA 1986) (“[T]he smashed-up condition of the front windshield and the absence of any vehicle identification numbers on the car should have placed a reasonable person on notice of the probable stolen nature of the vehicle....”);
 
 B.S. v. State,
 
 320 So.2d 459, 461 (Fla. 3d DCA 1975) (“Knowledge on a defendant’s part to sustain a conviction for receiving stolen property may be shown ... if the state proves ... that the circumstances of the transaction were sufficiently suspicious to put a person of ordinary intelligence and caution on inquiry.”) (citations omitted). Moreover, the state proved that the motorcycle parts were in fact stolen, and “proof of possession of property recently stolen, unless satisfactorily explained, gives rise to an inference that the person in possession of the property knew or should have known that the property had been stolen.” § 812.022(2), Fla. Stat. (2004).
 

 Further, the fact that the defendant was present when an agent turned the lights off and told everyone to stop working because there was a marked police car parked outside should have put the defendant on notice that he was working in a chop shop.
 
 See United States v. Uder,
 
 98 F.3d 1039, 1042, 1044-45 (8th Cir.1996) (evidence supported knowledge element of conducting operations in chop shop where, among other things, defendant was “waved off’ as he approached shop, apparently because police were there, but later returned to continue work).
 

 Racketeering
 
 /
 
 Conspiracy
 

 According to the standard jury instruction for racketeering, as used in this case, the state had to prove: (1) the defendant was employed by or associated with an enterprise; (2) the defendant conducted or participated in, directly or indirectly, such enterprise by engaging in at least two predicate incidents; and (3) of those incidents in which the defendant was engaged,
 
 at least two of them had the same or similar intents,
 
 results, accomplices, victims, or methods of commission or were interrelated by distinguishing characteristics and were not isolated incidents.
 
 See
 
 Fla. Std. Jury Instr. (Crim.) 26.7 (emphasis added);
 
 see also
 
 § 895.03(3), Fla. Stat. (2004) (“It is unlawful for any person employed by, or associated with, any enterprise to conduct or participate, directly or indirectly, in such enterprise through a pattern of racketeering activity....”).
 

 According to the standard jury instruction for conspiracy, as used in this case, the state had to prove: (1) two or more persons, in some way or manner, came to a mutual understanding to try to accomplish a common and unlawful plan, namely to engage in a pattern of racketeering activity as charged in the information; (2) the defendant
 
 knowingly and willfully
 
 became a member of such conspiracy; and (3) at the time the defendant joined such conspiracy, he did so
 
 with the specific intent
 
 either to personally engage in at least two incidents of racketeering, as alleged in the information, or he
 
 specifically intended
 
 to otherwise participate in the affairs of the enterprise
 
 with the knowledge and intent
 
 that other members of the conspiracy would engage in at least two incidents of racketeering, as alleged in the information,
 
 *48
 
 as part of a pattern of racketeering activity.
 
 See
 
 Fla. Std. Jury Instr. (Crim.) 26.8 (emphasis added);
 
 see also
 
 § 895.03(4), Fla. Stat. (2004) (“It is unlawful for any person to conspire or endeavor to violate any of the provisions of [§ 895.03(3)].”).
 

 Sufficient evidence exists to show that the defendant knew he was joining a criminal enterprise, and that he specifically intended to engage in the crimes which the state ultimately charged as the predicate acts for racketeering. Again, the vehicles which the defendant dismantled had visible signs that they were stolen.
 
 Periu,
 
 490 So.2d at 1329. The defendant was present when an agent turned the lights off and told everyone to stop working because there was a marked police car parked outside.
 
 Uder,
 
 98 F.3d at 1042. After the operation resumed, the defendant returned over multiple days to continue dismantling vehicles and loading parts into shipping containers. The facts that the defendant may not have had full knowledge of all of the operation’s details, and was not present from the operation’s inception or at all times thereafter, are insufficient to prevent a conviction.
 
 See
 
 Fla. Std. Jury Instr. (Crim.) 26.8 (“A person may become a member of a conspiracy
 
 without full knowledge
 
 of all of the details of the unlawful scheme.... So, if a defendant has an understanding of the unlawful nature of a plan and
 
 knowingly and willfully joins in that plan on one occasion,
 
 that is sufficient to convict him for conspiracy, even though he did not participate before and even though he played only a minor part.”) (emphasis added);
 
 Salinas v. United States,
 
 522 U.S. 52, 65, 118 S.Ct. 469, 139 L.Ed.2d 352 (1997) (“[I]t suffices that [a conspirator] adopt the goal of furthering or facilitating the criminal endeavor.”).
 

 In sum, the state’s evidence was sufficient to prove that the defendant was not merely an innocent day laborer who was ignorant of the illegal nature of the operation. Rather, the state’s evidence was sufficient to prove that the defendant knew he was joining a criminal enterprise, and that he was committing offenses to further that enterprise. Thus, we affirm the defendant’s convictions for dealing in stolen property, operating a chop shop, racketeering, and conspiracy to commit racketeering.
 
 [1]
 

 Affirmed.
 

 TAYLOR and LEVINE JJ., concur.
 

 [1]
 

 . Despite our affirmance based on the evidence of this case, we join other courts in cautioning the state to use its prosecutorial discretion wisely in deciding which persons to charge with racketeering and conspiracy.
 
 See State v. Otte,
 
 887 So.2d 1186, 1190 n. 4 (Fla.2004) ("LTJhe target of RICO Act prosecutions will be [,] appropriately, the professional or career criminal and not non-racketeers who have committed relatively minor crimes.”) (citation omitted);
 
 Jackson v. State,
 
 858 So.2d 1211, 1213 (Fla. 3d DCA 2003) ("[T]he concept of enterprise is not to be applied to ‘garden variety criminal undertakings.’ ”) (citation omitted);
 
 Mickenberg v. State,
 
 640 So.2d 1210, 1211 (Fla. 2d DCA
 
 *49
 
 1994) (“One danger that lurks in the criminal charge of conspiracy is the tendency to make the crime so elastic, sprawling and pervasive as to defy meaningful definition.”) (citation omitted).