**United States Court of Appeals**

**FOR THE EIGHTH CIRCUIT**

_____

No.  97-1204

_____

United States of America,          *
                                   *
            Plaintiff - Appellee,  *  Appeal from the United States
                                   *  District Court for the
    v.                             *  Eastern District of Missouri.
                                   *
Terrick Alfred Williams,           *
                                   *
            Defendant - Appellant. *
                                   *


_____

Submitted: September 11, 1997
       Filed: February 10, 1998

_____

Before HANSEN, ROSS, and MURPHY, Circuit Judges.

_____

HANSEN, Circuit Judge.

    Terrick Williams appeals his convictions on counts of carjacking, using a firearm during a crime of violence, and being a felon in possession of a firearm.  He challenges the sufficiency of the evidence and the admissibility of his confession.  We affirm the district court.[1]

---

[1]The Honorable George F. Gunn, Jr., United States District Judge for the Eastern District of Missouri.

## I.  Factual Background

Williams' convictions arose from two incidents.  In the first incident, the evidence offered showed that Edith Cooper and her three-year-old son were waiting in Cooper's parked 1989 Mercury Cougar while Cooper's friend shopped.  A man approached Cooper's car and opened its unlocked door.  Upon seeing Cooper and her son inside the car, the man said "excuse me," and closed the door.  The man then opened the door again, pointed a gun at the child, said "a few choice dirty words" to Cooper, and ordered the two out of the car.  (Trial Tr. Vol. 1 at 109.)  Cooper complied with the order by grabbing her son and running into the store.  The man drove away in Cooper's car.

The second incident began the next morning when Dr. Jill O'Har drove into the parking lot of the hospital where she worked.  O'Har parked her BMW, exited the vehicle and was retrieving items from the passenger side of her car when a man grabbed her from behind and pushed her down towards the interior of her car.  The man ordered O'Har not to say anything.  Initially, O'Har thought someone was joking with her, but the man continued to push O'Har down toward the passenger seat while pressing his body against her.  When O'Har turned she saw the man's face.  Fearing she would be killed if she was forced into her car, O'Har began to scream and put her hands on top of the car to resist being pushed into the vehicle.  As O'Har continued to scream, the man backed away and grabbed her briefcase from the front seat of the car.  O'Har then saw that the man had a revolver in his hand.  When another car pulled into the parking lot the man ran to a 1989 Mercury Cougar and drove away.  The police later recovered Cooper's 1989 Mercury Cougar parked on a nearby street.

Erin McDonough witnessed the incident involving O'Har from a distance of about 30 feet.  She was able to see the man and O'Har during the struggle and saw the

-2-

man's face as he drove away in the Mercury. Later, both McDonough and O'Har each identified Williams as the man in a police photo array.

Shortly after the incident involving O'Har, the police received an anonymous telephone call stating Williams was responsible for the incident. The caller also gave the police two addresses that Williams allegedly frequented. Following the positive identifications by McDonough and O'Har in the photo array, the police went to one of these addresses and obtained written permission from an occupant to search the premises. The police found Williams during this search, took him into custody, and read him his Miranda rights. Williams stated he understood his rights. The police also recovered a .38 revolver with Williams' fingerprints on it. The officers did not question Williams after his arrest or while transporting him to the police station. Williams also did not assert his right to remain silent or his right to counsel. At the police station, both McDonough and O'Har identified Williams in a lineup. When an officer informed Williams that he had been identified in the lineup, Williams indicated that he wanted to talk with the officer. The officer again advised Williams of his Miranda rights, and Williams again said he understood his rights. After waiving his rights, Williams confessed that he had "jacked a lady for her car" in a store parking lot and had "jacked a lady by a car . . . when she started screaming. I took her briefcase and ran back to the car." (Trial Tr. Vol. 1 at 281.)

The police later went to the second address given by the anonymous caller. After receiving written permission from an occupant to search the premises, the police seized items that the occupant said were not hers. Ms. Cooper identified these items as property that had been in her car before it was stolen. Although Ms. Cooper was unable to identify Williams as the man who stole her car, Williams' fingerprints were found on a telescope that was in the trunk of Cooper's car.

Williams was charged with two counts of carjacking in violation of 18 U.S.C. § 2119 (1994), two counts of using a firearm during a crime of violence in violation of

18 U.S.C. § 924(c)(1), and two counts of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). A jury convicted him of all charges, and the district court sentenced him to 450 months of imprisonment. Williams appeals his convictions.

## II. Analysis

### A. Intent Required for Carjacking

Williams first argues that there was insufficient evidence to convict him of carjacking in either incident, because the government failed to prove that he had a specific intent to cause death or serious bodily harm as required by the carjacking statute, 18 U.S.C. § 2119. Williams claims the government is required to prove that he possessed an unconditional intent to cause death or serious bodily harm, regardless of whether the victim relinquishes his or her car. The government argues that an intent to cause death or serious bodily harm if the victim does not comply with the defendant's demands is sufficient to satisfy the statute's specific intent requirement. The government asserts there is sufficient evidence to support the jury finding that Williams possessed this conditional intent.

We must interpret the carjacking statute to resolve these conflicting claims. We review the district court's interpretation of the statute de novo. See Loehrer v. McDonnell Douglas Corp., 98 F.3d 1056, 1061 (8th Cir. 1996). In interpreting a statute "we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy." Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 51 (1987) (internal quotations omitted).

The carjacking statute provides as follows:

> Whoever, with the intent to cause death or serious bodily harm takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation, or attempts to do so, shall--
>> (1) be fined under this title or imprisoned not more than 15 years, or both,
>> (2) if serious bodily injury (as defined in section 1365 of this title) results, be fined under this title or imprisoned not more than 25 years, or both, and
>> (3) if death results, be fined under this title or imprisoned for any number of years up to life, or both, or sentenced to death.

18 U.S.C. § 2119 (1994).

Thus, a carjacking conviction requires proof of three basic elements. First, the defendant must have taken or attempted to take a motor vehicle from a "person or presence of another by force and violence or by intimidation." Id. Second, the defendant must have acted "with the intent to cause death or serious bodily harm." Id. Third, the motor vehicle involved must have been "transported, shipped, or received in interstate or foreign commerce." Id.

At least four of our sister circuits have been confronted with the issue we face here: whether a conditional intent to cause death or serious bodily harm if the victim does not relinquish his or her car satisfies the intent element. The Ninth Circuit answered the question in the negative, holding "[t]he mere conditional intent to harm a victim if she resists is simply not enough to satisfy § 2119's new specific intent requirement." United States v. Randolph, 93 F.3d 656, 665 (9th Cir. 1996). The court found that the defendant's threat to harm the victim if she did not relinquish her car satisfied the intimidation part of the first element, but was insufficient to show the defendant intended to cause death or serious bodily harm where his accomplices

-5-

impulsively and independently assaulted the victim. Id. The court reasoned that "to construe a threat to satisfy §2119's intent element as well as its 'taking' element would be to make surplusage of the intent element." Id. at 665 n.6. Such an interpretation, the Ninth Circuit concluded, would "eliminate" the government's burden to prove "that additional intent element." Id. at 665.

We respectfully disagree with this reasoning. It is very likely, in our view, that the same actions which satisfy the taking by force or intimidation element may also serve to indicate an intent to cause death or serious bodily injury. Consistent with our view, the Tenth Circuit has rejected the Ninth Circuit's reasoning, explaining that the carjacking statute's taking and intent elements do not constitute two separate and distinct "intent requirements." United States v. Romero, 122 F.3d 1334, 1338 (10th Cir. 1997), petition for cert. filed, (U.S. Nov. 17, 1997) (No. 97-6863). "Instead, the plain language of the statute indicates that the 'tak[ing] . . . by force or intimidation' element comprises the actus reus of the crime and the 'intent to cause death or serious bodily harm' element constitutes the mens rea of the crime." Id. at 1338-39 (alterations in original).

In contrast to the Ninth Circuit's rejection of conditional intent, the Second, Third, and Tenth Circuits have all held that conditional intent is sufficient to satisfy the intent requirement of § 2119. See United States v. Arnold, 126 F.3d 82, 89 (2d Cir. 1997); Romero, 122 F.3d at 1339; United States v. Anderson, 108 F.3d 478, 485 (3d Cir.), cert. denied, 118 S. Ct. 123 (1997). In Anderson, the Third Circuit noted that the practical effect of the Ninth Circuit's Randolph holding is to limit the application of the carjacking statute to only those cases where the defendant actually physically harms the victim, because "[r]arely will there be a case where there will be evidence of a defendant's unconditional intent to cause death or serious bodily harm whether or not the victim relinquishes his or her car, yet the victim sustains no injuries." 108 F.3d at 483. The court stated that such a result is clearly contrary to Congressional intent as evidenced in the statue itself, because "Congress has provided for enhanced penalties

-6-

when a carjacking does, in fact, result in death or serious bodily injury." Id. (citing 18 U.S.C. § 2119(2) and (3)). The court then reviewed basic criminal law tenets regarding conditional intent, noting that conditional intent is normally sufficient to prove intent "unless the condition negatives the harm or evil sought to be prevented by the law defining the offense." Id. (quoting Wayne R. Lafave and Austin W. Scott, Jr., Substantive Criminal Law § 3.5(d), at 313 (1986)) (other internal quotations omitted). Because a conditional intent to harm the victim unless the victim relinquishes his or her car does not negate the harm sought to be prevented by the carjacking statute, the Third Circuit held conditional intent is sufficient to satisfy the intent element. Id. at 483-85.

The Second and Tenth Circuits have followed much of the reasoning of Anderson, also holding conditional intent can satisfy the intent element of the carjacking statute. In Romero, the Tenth Circuit initially noted that "[a]s a general rule, conditional intent is still intent." Romero, 122 F.3d at 1338 (internal quotations omitted). The Romero court agreed with Anderson that the structure of the carjacking statute itself showed that Congress did not intend to limit the offense of carjacking to those situations in which the victim was killed or suffered serious bodily harm because Congress had provided enhanced penalties in those particular situations. Id. at 1339. The Second Circuit similarly found that allowing conditional intent to satisfy the intent requirement "comports with a reasonable interpretation of the legislative purpose of the statute." Arnold, 126 F.3d at 88.

We find persuasive these courts' reliance on the structure of the carjacking statute itself to conclude that the specific intent requirement is satisfied by a defendant's conditional intent to cause death or serious bodily injury only if the victim does not relinquish the vehicle. By looking at § 2119 as a whole, including the enhanced penalties for carjackers whose actions actually cause death or physical injury, it is clear Congress did not intend to limit the reach of the federal carjacking statute to those situations where a defendant unconditionally intends death or serious bodily injury regardless of whether the victim surrenders the vehicle. See Anderson, 108 F.3d

at 483.  We hold that the intent element of the carjacking statute can be satisfied by proof that the defendant intended to cause death or serious bodily injury even if such a result is only intended if the victim refused to relinquish his or her car.

Having interpreted the statute, we must review Williams' sufficiency of the evidence claim to determine "if there is an interpretation of the evidence that would allow a reasonable jury to conclude" Williams possessed the necessary intent beyond a reasonable doubt.  United States v. Uder, 98 F.3d 1039, 1045 (8th Cir. 1996).  We review the evidence in the light most favorable to the verdict, drawing all reasonable inferences from the evidence in favor of the verdict.  United States v. Willis, 89 F.3d 1371, 1376 (8th Cir.), cert. denied, 117 S. Ct. 273 (1996).

Turning to the record in this case, we find there is sufficient evidence for a reasonable jury to conclude that Williams possessed this conditional intent to cause death or serious physical injury in both of the incidents.  In the first incident, the evidence supports a finding that Williams pointed his loaded revolver at Cooper's three-year-old son and ordered the two out of the car.  In the second incident, the evidence supports a finding that Williams attacked O'Har from behind and tried to force her into her car.  Williams was armed with a revolver during the attack.  Only O'Har's screams caused Williams to move away from her.  Even as Williams moved away, he continued to hold the gun.  Williams only fled the scene when another car entered the parking lot.  The jury could reasonably infer from this evidence that Williams intended to cause death or serious bodily injury on each occasion.

B.  Sufficiency of the Evidence in First Carjacking Incident

Williams next claims that there is insufficient evidence to convict him of carjacking in the first incident.  He contends that his statements to police that he "jacked" one victim for a car and another victim for a briefcase should have been suppressed because they were obtained in violation of Miranda v. Arizona, 384 U.S.

-8-

436 (1966).  Williams argues that because his initial statement to police, that he wanted to talk after being informed by an officer that he had been identified in a lineup, was coerced, his subsequent statements made after being advised of and waiving his Miranda rights are inadmissible.  Williams further argues that the remaining evidence is insufficient to convict him of carjacking in the first incident because the government failed to prove he was the man who stole Cooper's car.  We reject Williams' arguments because we hold that his statements were admissible under Miranda and that there is sufficient evidence to support his conviction for carjacking in the first incident.

We find that Williams' first statement, that he wanted to talk after being informed by the officer that he had been identified in a lineup, was voluntarily made without any coercion.  This statement was also not obtained in violation of Miranda.[2]

---

[2]We note that even if this statement had been obtained in violation of Miranda,Williams' subsequent statements would be admissible under Oregon v. Elstad, 470 U.S. 298 (1985).  In Elstad, the defendant, while in custody and in response to police interrogation, made an incriminating statement to police officers without first having been given his Miranda rights.  470 U.S. at 301.  He was then taken to the police station and, after being advised of and waiving his Miranda rights, executed an inculpatory written statement.  Id.  The Court addressed the issue of whether the failure to give Miranda warnings before the first statement "'taints' subsequent admissions made after a suspect has been fully advised of and has waived his Miranda rights."  Id. at 300.  The Court reasoned it would be "an unwarranted extension of Miranda to hold that a simple failure to administer the warnings, unaccompanied by any actual coercion or other circumstances calculated to undermine the suspect's ability to exercise his free will, so taints the investigatory process that a subsequent voluntary and informed waiver is ineffective for some indeterminate period."  Id. at 309.  Thus, the Court held that "a suspect who has once responded to unwarned yet uncoercive questioning is not thereby disabled from waiving his rights and confessing after he has been given the requisite Miranda warnings."  Id. at 318.

Williams' first statement, that he wanted to talk after the officer informed him he had been picked out of a lineup, was voluntarily made without any coercion or circumstances calculated to undermine Williams' ability to exercise his free will.  Thus, Williams' subsequent confession to police is admissible under Elstad so long as it was given after he was advised of and voluntarily waived his Miranda rights.  See id. Williams was given these rights, he understood them, and he waived them prior to giving his statement.

Assuming arguendo that the officer's statement to Williams that he had been identified was "interrogation" for purposes of Miranda, there was no violation.  Williams was advised of his Miranda rights when he was arrested earlier in the day, he told police he understood his rights, and he did not assert any of his rights.  Under such circumstances, Miranda did not prevent the officer from "interrogating" Williams by telling him he had been identified in the lineup.  See Miranda, 384 U.S. at 475.  We therefore hold that Williams' subsequent statements, made after again being advised of his Miranda rights and waiving those rights, were admissible.

We next review the record to determine if a reasonable jury could have found Williams guilty of carjacking in the first incident.  Uder, 98 F.3d at 1045.  Williams told the police that he "jacked a lady for her car." (Trial Tr. Vol. 1 at 281.)  Williams' fingerprints were found on Cooper's telescope in the trunk of Cooper's car.  An eyewitness saw Williams driving Cooper's stolen car after the incident involving O'Har, the morning after Cooper's car was stolen.  We conclude that this evidence is sufficient to support a finding that Williams was the man who carjacked Cooper's car.  Williams' carjacking conviction for the first incident must therefore stand.

C.  Sufficiency of the Evidence in Second Carjacking Incident

Williams next argues that there is insufficient evidence to convict him of carjacking in the second incident because the government failed to prove he intended to steal O'Har's car.  The carjacking statute expressly prohibits attempts.  See 18 U.S.C. § 2119.  We review Williams' sufficiency of the evidence claim to see if a

-10-

reasonable jury could have found Williams attempted to steal O'Har's car beyond a reasonable doubt. Uder, 98 F.3d at 1045. A defendant must take a "substantial step" towards the completion of the crime to constitute an attempt. See United States v. Carlisle, 118 F.3d 1271, 1273 (8th Cir. 1997). "A substantial step is conduct such that if it had not been extraneously interrupted would have resulted in a crime." Id. We again review the evidence in the light most favorable to the verdict, drawing all reasonable inferences from the evidence in favor of the verdict. Willis, 89 F.3d at 1376.

Our review of the record convinces us that there is sufficient evidence to support Williams' conviction for the second carjacking incident. The evidence supports a finding that Williams attacked O'Har while she was retrieving items from her car. Williams tried to shove O'Har into her car. He ordered O'Har not to say anything while he was trying to push her into the car. Williams was armed with a revolver during the incident. These facts all support a reasonable inference that Williams was attempting to steal O'Har's car and that he took the required substantial steps towards that goal.

## D. Sufficiency of the Evidence for Using a Firearm During a Crime of Violence

Williams' final argument is that the district court erred in failing to direct verdicts of acquittal for the two counts of using a firearm during a crime of violence. Williams bases this argument on his previous claims that there was insufficient evidence to support his carjacking convictions, the underlying violent crimes. Because we have held there was sufficient evidence to support those convictions, we reject this argument.

## III. Williams' Post-Argument Motions

After this case was submitted following oral argument, Williams' counsel made two motions to this court. First, Williams moved to withdraw the last argument he made in his initial appellate brief. We grant this motion and therefore do not consider that argument in this opinion.

Second, Williams moved this court to reconsider our prior order which denied his prior motion to file a supplemental appellate brief. Williams' original motion to file a supplemental brief was made after the government had filed its main brief and after he had filed his reply brief. We also note that Williams raises six new arguments in his tendered supplemental brief. Allowing the supplemental brief to be filed would require granting the government substantial time to respond to these new arguments. More importantly, Williams was granted numerous extensions of time to file his initial brief with this court. Even with these numerous extensions, he filed his initial brief late, along with a motion to file his brief out of time. We granted his motion and allowed him to file the late brief. Considering all of the above facts, we deny Williams' motion to reconsider our prior order denying his motion to file a supplemental brief. At some point briefing and argument must end and the appeal must be decided. Williams passed this point long ago.

## IV. Williams' Pro Se Briefing

On June 24, 1997, an administrative panel of this court permitted Williams to file a pro se supplemental brief, leaving this hearing panel to determine the weight to be given to the arguments advanced. On August 14, 1997, this panel denied Williams' further requests to file additional pro se briefs. We have carefully considered the arguments Williams makes in the pro se brief he was authorized to file and we reject them. We have also reviewed the arguments he makes in the later brief he sent to the court before we entered our order denying him further pro se briefing. We rely on

counsel to winnow the issues on appeal.  <u>Garrett v. United States</u>, 78 F.3d 1296, 1306 (8th Cir.), <u>cert. denied</u>, 117 S. Ct. 374 (1996).  Because Williams' later pro se briefing appears primarily to be an earlier draft of his counseled brief and contains issues not raised in the appellant's opening brief as filed by counsel, we decline to consider them.  We also decline to address Williams' complaints concerning his appellate counsel's effectiveness.  Our declinations are without prejudice to any later 28 U.S.C. § 2255 motion Williams may bring.

V.  Conclusion

Accordingly, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.