F I L E D
United States Court of Appeals
Tenth Circuit

AUG 23 2000

PATRICK FISHER
Clerk

PUBLISH

# UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

STACY LYNN MALONE,

     Defendant-Appellant.

No. 99-5201

**Appeal from the United States District Court
for the Northern District of Oklahoma
(D.C. No. 99-CR-12-K)**

Vicki Mandell-King, Assistant Federal Public Defender (Michael G. Katz, Federal Public Defender, with her on the briefs), Denver, Colorado, for Defendant-Appellant.

Thomas Scott Woodward, Assistant United States Attorney (Stephen C. Lewis, United States Attorney, with him on the brief), Tulsa, Oklahoma, for Plaintiff-Appellee.

Before **EBEL**, **MCKAY**, and **BRISCOE**, Circuit Judges.

**EBEL**, Circuit Judge.

Defendant-Appellant Stacy Malone was charged with seven counts in a fourteen count superseding indictment. On May 20, 1999, at the conclusion of a

jury trial, Malone was found guilty of: conspiracy, interference with interstate commerce, possession of a firearm during a crime of violence, and carjacking. In addition, Malone was convicted of aiding and abetting in connection with each of the above offenses, with the exception of the conspiracy count. On appeal, Malone raises five issues. He argues that (1) there was insufficient evidence to support his conviction for carjacking, (2) 18 U.S.C. § 924(c) does not authorize two convictions where the predicate crimes were part of a continuous course of conduct, (3) the district court committed plain error when it instructed the jury that only a de minimis effect on interstate commerce was necessary to prove the jurisdictional nexus under 18 U.S.C. § 1951, (4) the district court erred in calculating his guideline range because there was an insufficient showing that the victim was abducted to facilitate the carjacking, and (5) the district court erred in failing to group the U.S. Express robbery conviction with the carjacking conviction under U.S.S.G. §3D1.2(c). We exercise jurisdiction under 28 U.S.C. § 1291 and AFFIRM.[1]

---

[1] Following oral argument in this case, Malone submitted a Motion for Permission to File Supplemental Brief, in which he requested permission to file a supplemental brief discussing recent Supreme Court decisions and permission to argue an additional issue not previously raised. Pursuant to Federal Rule of Appellate Procedure 28(j), counsel for Malone submitted as supplemental authority the Supreme Court decisions on which she now requests permission to brief. We have considered this authority and find further briefing on the cases unnecessary. With regard to the request to argue an additional issue, this request

(continued...)

# BACKGROUND

U.S. Express Robbery

On December 21, 1998, Estac Love ("Love"), Willie Cobb ("Cobb"), and Stacy Malone ("Malone") decided they would rob the U.S. Express located at 1610 North Lewis in Tulsa, Oklahoma. To that end, the three men drove to the U.S. Express and observed Christine DeMauro ("DeMauro"), the manager of the U.S. Express, exiting the building. Love, Cobb, and Malone then followed DeMauro as she drove away from the U.S. Express with the intention of carjacking her and forcing her to return to the U.S. Express to enable them to get inside the business and rob it. DeMauro, unaware that she was being followed, drove to her grandparent's house to pick up her son. When DeMauro arrived at her grandparent's house, she went into the house to retrieve her son. As she was walking back outside to drive away, Love approached her, put a gun to her face, and demanded that she get down. Love then dragged her back to the carport, which is attached to her grandparent's house, and again forced her onto the ground, demanding that DeMauro turn over her keys to him. DeMauro lied, saying that she did not have the keys. At that point, Love walked over to

---

[1](...continued)
is untimely. The motion is therefore denied.

DeMauro's car, retrieved her keys, and found the key and alarm beeper for U.S. Express.

Meanwhile, Malone, armed with a .380 caliber pistol, and Cobb noticed that the people inside the house were watching. At that point Malone, Cobb, and Love, dragging DeMauro, entered the house and tied up DeMauro's grandparents and her son with duct tape. When the men used the duct tape to cover the little boy's mouth, DeMauro became extremely upset, demanding that the men take the tape off the boy's mouth because he was asthmatic. Cobb complied. Meanwhile, Malone had searched the house and returned with a glass jar full of change which he took with him when they eventually left the house.

Leaving the grandparents and the boy inside the house, Love forced DeMauro back into the front passenger seat of her car at gunpoint. With Cobb seated in the back seat and Malone following in another car, Love drove DeMauro's car back to the U.S. Express at 1610 North Lewis in Tulsa, Oklahoma.

When they arrived at the U.S. Express, Love forced DeMauro to deactivate the alarm system and threatened to kill her if she hit any other buttons. Love and DeMauro then entered the building. Love directed DeMauro to remove the surveillance videotape and then had her open the safe where the money was held. Love then began filling a bag he had brought with him with money from the safe. When Love finished removing all of the money, he forced DeMauro back outside.

- 4 -

Because Malone was not waiting out in front with his car, Love, Cobb, and DeMauro got back into her car and drove around until they found Malone. During this drive, one of the men told DeMauro not to do anything stupid as he still had the gun on her. Once Love and Cobb located Malone, they got out of DeMauro's car and grabbed approximately $900 from the bag of money. Love then said "thank you" to DeMauro and kissed her on the cheek as he walked away. Love, Cobb, and Malone then drove away in Malone's car. The three men split the money evenly with Malone receiving about $300. The majority of the money from the U.S. Express robbery had been left in DeMauro's car.

The Grandy's Robbery

On January 5, 1999, Malone, Love, and Cobb decided to rob the Grandy's restaurant located at 2140 S. Garnett in Tulsa, Oklahoma.[2] Malone parked the car at a bar across the parking lot from the Grandy's and the trio approached the restaurant. Malone and Love were both armed with weapons. Malone stayed outside near the drive-thru window, while Cobb stationed himself inside the front door. Love then entered the restaurant wearing a green mask and pointing his weapon at the employees. When the people in the restaurant saw Love and his

_____

[2] Malone told Agent Legleiter and the grand jury that he and Cobb had argued prior to the Grandy's robbery because of Malone's reluctance to participate in the robbery. Cobb, during his trial testimony, however, denied forcing Malone to participate in the robbery.

gun, they began running away screaming. Love then ran out of the Grandy's after losing control of the situation, and before he was able to take any money. Malone and Cobb likewise ran from the restaurant, and the three men returned to Malone's car and drove away. (Id.)

On March 4, 1999 the grand jury for the Northern District of Oklahoma charged Malone with seven counts in a fourteen-count superseding indictment. Count three charged Malone with conspiracy in violation of 18 U.S.C. § 371, counts four and eight charged him with interference with interstate commerce and aiding and abetting in violation of 18 U.S.C. §§ 1951 and 2, counts five, seven, and nine charged Malone with possession of a firearm during a crime of violence and aiding and abetting in violation of 18 U.S.C. §§ 924(c) and 2, and count six charged him with carjacking and aiding and abetting in violation of 18 U.S.C. §§ 2119 and 2. On May 20, 1999 a jury found Malone guilty of all the above counts.

On September 14, 1999 the district court sentenced Malone. The court grouped counts three, conspiracy, and four, armed robbery and aiding and abetting, together as recommended by the presentence report. The court determined that the offense level was 20, because that was the offense level for armed robbery under U.S.S.G. § 2B3.1(a). The court then increased the base offense level by four pursuant to section 2B3.1(b)(4)(A) because a person was abducted to facilitate commission of the offense. The district court further

imposed a one level increase pursuant to section 2B3.1(b)(7)(B) because the loss exceeded $10,000. The court determined that the adjusted offense level for the first group of convictions was 25.

The court then grouped count three, conspiracy, with count six, carjacking and aiding and abetting. The court determined that the base offense level was 20 pursuant to U.S.S.G. § 2B3.1(a) and then increased the base offense level by four because a victim was abducted to facilitate commission of the offense pursuant to section 2B3.1(b)(4)(A). Likewise, the court added a two-level increase pursuant to section 2B3.1(b)(5) because the offense involved a carjacking. Thus, the court determined that the adjusted offense level for the second group of convictions was 26.

The final group of convictions constructed by the court consisted of count three, conspiracy, and count eight, armed robbery and aiding and abetting. The base offense level for this crime was 20. No further adjustments were made to this group. The district court then increased Malone's offense level for each multiple count group pursuant to U.S.S.G. § 3D1.4, making Malone's combined adjusted offense level 29 for counts three, four, six, and eight. The district court then sentenced Malone to 97 months for each of counts three, four, six, and eight to run concurrently.

The district court then addressed counts five, seven, and nine, which were all firearm convictions in violation of 18 U.S.C. § 924(c). The applicable sentencing guideline, U.S.S.G. § 2K2.4(a), dictated that the penalty was that required by the statute section 924(c). Thus, the district court sentenced Malone to seven years for count five and two terms of twenty-five years for counts seven and nine. Each of these three sentences were consecutive to the 97 months for counts three, four, six, and eight. Malone now appeals his convictions and sentence.

## DISCUSSION

### I. Sufficiency of the Evidence

Malone argues that there was insufficient evidence for a jury to find beyond a reasonable doubt that he had the intent to kill or inflict serious bodily injury at the time he carjacked DeMauro's vehicle as required by 18 U.S.C. § 2119. Specifically, he argues that although the threats and actions of Love, Cobb, and himself may have satisfied the "by force or by intimidation" element, they did not satisfy the intent element, because there was no additional evidence that had DeMauro not complied, the defendants would have killed or injured her. We disagree that the evidence failed to show the required intent to cause serious bodily harm.

We review the sufficiency of the evidence de novo. United States v. Brown, 200 F.3d 700, 704 (10th Cir. 1999). However, we do so while "viewing the evidence and the reasonable inferences to be drawn therefrom in the light most favorable to the government. We will reverse only if no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 704-05 (internal citations and quotations omitted).

Section 2119, the federal carjacking statute, makes it a crime to "take[] a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation" with "the intent to cause death or serious bodily harm." 18 U.S.C. § 2119.

In Holloway v. United States, 526 U.S. 1, 119 S.Ct. 966, 143 L.Ed.2d 1 (1999), the Supreme Court interpreted the intent requirement of section 2119. The defendant in Holloway argued that, to be convicted under the carjacking statute, the government must prove that the defendant possessed "a specific and unconditional intent to kill or harm in order to complete the proscribed offense." Id. at 7. The Court rejected this interpretation of the intent element of section 2119, and instead held that the intent element can be satisfied even when the government proves that the defendant possessed only a "conditional intent." The Court stated:

In a carjacking case in which the driver surrendered or otherwise lost control over his car without the defendant attempting to inflict, or actually inflicting, serious bodily harm, Congress' inclusion of the intent element requires the Government to prove beyond a reasonable doubt that the defendant would have at least attempted to seriously harm or kill the driver if that action had been necessary to complete the taking of the car.

Id. at 11-12. Thus, the government in this case was required to prove that "at the moment [the defendants] demanded or took control over the driver's automobile the defendant[s] possessed the intent to seriously harm or kill [DeMauro] if necessary to steal the car." Id. at 12.

The Court also made clear that the intent requirement will not always be met just by showing that the element of intimidation was present. The Court specifically noted that, "[w]hile an empty threat, or intimidating bluff, would be sufficient to satisfy [the by force or intimidation element], such conduct, standing on its own, is not enough to satisfy § 2119's specific intent element." Id. at 11. We do not read this language, however, to imply that the same actions which satisfy the taking by force or intimidation element may never serve also to prove the intent to cause death or serious bodily injury. Instead, it is necessary to look at the totality of the circumstances to determine whether the words and actions of the defendants sufficiently demonstrate a conditional intent to cause serious bodily harm. For example, as one court has noted, if a defendant ordered a carjacking victim to do as he was told or he would be shot, while carrying an

- 10 -

unloaded weapon, the intimidation element would be satisfied although the intent element might not. See United States v. Jones, 188 F.3d 773, 777 (7th Cir. 1999).

In this case, the evidence showed that as DeMauro exited her grandparent's house, Love put a gun to her face and forced her to the ground. He then dragged her up to the carport and shoved her back to the ground demanding that she give him the keys to U.S. Express. When DeMauro lied and stated that she did not have the keys with her, Love shoved her down, and went and retrieved the keys on his own from her car. Once the defendants became aware that they were being watched from the house, they dragged DeMauro back into her grandparents' house and proceeded to tape the hands and feet of both her grandparents and her son. After ensuring that they were sufficiently restrained, the defendants forced DeMauro, again at gunpoint, out to her car. We believe a jury could conclude beyond a reasonable doubt based on the above evidence that, at the time of the carjacking, the defendants had a real and present intent to seriously harm DeMauro if necessary to complete the carjacking. See United States v. Lake, 150 F.3d 269, 272 (3d Cir. 1998) (finding sufficient evidence to support intent based on fact that gun was real, defendant waived the gun in front of victim and ordered her to surrender her keys, and when she hesitated placed the gun close to her head and asked again for the keys); United States v. Williams, 136 F.3d 547, 552 (8th Cir. 1998) (concluding jury could infer necessary intent in the first of two

carjacking attempts based on the facts that the defendant pointed a revolver at the driver's son and ordered the driver and her son out of the car); United States v. Kimble, 178 F.3d 1163, 1166 (11th Cir. 1999) (finding intent when defendants entered a restaurant wielding guns and pointing them at several employees and hitting one employee in the face when he failed to comply, despite one defendant's statement that no one would be hurt if they did what he said).

Malone argues that because there was evidence that defendant Cobb removed the duct tape from DeMauro's son's mouth upon the request of DeMauro and never threatened to kill her at the time of the carjacking, and in fact intended to use her assistance to carry out the U.S. Express robbery, the requisite intent was not shown. The fact that the defendants did not actually harm DeMauro or her son does not imply that they would not have harmed him or DeMauro had DeMauro further resisted the carjacking. See Williams, 136 F.3d at 547, 551-52 (finding intent when defendant, armed with a weapon, tried to force victim into the car, but when victim screamed and another person entered the parking lot fled without harming the victim). Moreover, the fact that the defendants wanted to use DeMauro during the U.S. Express robbery does not mean that they would not have ultimately caused her serious bodily harm if she had further resisted the carjacking. To the contrary, a jury could reasonably infer that the actions of the defendants in tying up DeMauro's family, holding a gun to her head, and shoving

her to the ground several times, showed that they had the intent to harm DeMauro seriously if necessary. Thus, we conclude that there was sufficient evidence to prove the element of intent beyond a reasonable doubt.

## II. § 924(c) Convictions

Malone next argues that 18 U.S.C. § 924(c) does not authorize two convictions when the two predicate offenses, the U.S. Express robbery and the carjacking, were part of a continuous course of conduct. Thus, Malone contends that he should have only been convicted of one § 924(c) conviction and sentenced accordingly. Normally, we review de novo the district court's interpretation of a criminal statute, see United States v. Romero, 122 F.3d 1334, 1337 (10th Cir. 1997), but because Malone's counsel failed to raise this issue before the district court, we review only for plain error. See United States v. Alessandroni, 982 F.2d 419, 420 (10th Cir. 1992). "In order to evoke this exception, the error must be particularly egregious, as well as obvious and substantial, and we will apply it solely in those circumstances in which a miscarriage of justice would otherwise result." United States v. Gilkey, 118 F.3d 702, 704 (10th Cir. 1997) (internal quotations and citations omitted). As we explained in Alessandroni, however, "the imposition of a sentence based on an erroneous interpretation of the law constitutes plain error." Alessandroni, 982 F.2d at 420.

- 13 -

We now turn to whether the district court committed plain error in its interpretation of § 924(c). § 924(c) states:

> [A]ny person who, during and in relation to any crime of violence or drug trafficking crime . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime–(i) be sentenced to a term of imprisonment of not less than 5 years."

18 U.S.C. § 924(c)(1)(A). In this case, Malone was convicted of two § 924(c) offenses, relating respectively to Malone's convictions for the U.S. Express robbery and carjacking. Malone argues that under the language of § 924(c) "any crime of violence" does not authorize two § 924(c) convictions when the two predicate offenses, here robbery and carjacking, are part of one continuous course of conduct. We believe our precedent forecloses this argument.

In United States v. Chalan, 812 F.2d 1302 (10th Cir. 1987), the defendant was convicted of felony murder while committing a robbery. He was also convicted separately of the robbery and two counts of violating the gun provisions of section 924(c). Although the defendant was sentenced concurrently on the felony murder and robbery convictions, he was sentenced consecutively on the two firearm charges. The defendant contended that "Congress did not intend to impose consecutive sentences for two violations of section 924(c) when consecutive sentences may not be imposed for the two underlying offenses." Id.

- 14 -

at 1316. In reaching the holding in Chalan that double jeopardy had been violated, we first recognized that in order for the jury to have sustained two convictions under section 924(c), they were required to find two crimes of violence. Thus, we had to determine whether the two predicate offenses at issue in Chalan were one "crime of violence" or two.

To decipher Congress' intent, we turned to the test devised by the Supreme Court in Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). Under Blockburger, "'the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.'" Chalan, 812 F.3d at 1316 (quoting Blockburger, 284 U.S. at 304). Under this test, we concluded that the underlying crimes in Chalan of felony murder while committing robbery and robbery constituted a single offense for double jeopardy purposes, and thus a single predicate "crime of violence" within the meaning of section 924(c). See id. at 1317. Thus, Chalan equated the double jeopardy analysis with what constitutes a single crime of violence under section 924(c).

We again used the Blockburger test in United States v. Abreu, 962 F.2d 1425 (10th Cir. 1992), rev'd other grounds, 997 F.2d 825 (10th Cir. 1993). The question in Abreu was "whether two consecutive sentences under § 924(c) may be applied where a defendant has been convicted of *two* drug trafficking offenses

which arise out of the same criminal episode or operative facts and where a different gun is paired with each drug trafficking offense." Id. at 1433. Relying on Chalan, we again looked to Blockburger and determined that under Blockburger the two predicate drug trafficking offenses were two separate offenses, and therefore they also constituted two separate offenses within the meaning of section 924(c). Id. at 1434. Thus, even though the two predicate offenses were part of one criminal episode all occurring on the same day and involving the same operative facts (possession with intent to distribute cocaine and conspiracy to possess cocaine with the intent to distribute), we determined that under the Blockburger test there were two separate crimes under section 924(c) because each crime required proof of a fact not required to convict under the other crime, and therefore consecutive sentences were allowed. Id.; see also United States v. Sturmoski, 971 F.2d 452, 461-62 (10th Cir. 1992) (noting that this court has held that as long as underlying offenses do not violate double jeopardy, two consecutive sentences under section 924(c) can be imposed even though underlying offenses arose from same criminal episode and even though the same gun was paired with each underlying offense, citing Chalan and Abreu).

Likewise in United States v. Floyd, 81 F.3d 1517 (10th Cir. 1996), we again applied the Blockburger test to determine whether a district court had erred in imposing consecutive sentences under section 924(c). In Floyd, the defendant

argued that the predicate offenses of kidnapping and carjacking were one continuous event.  See id. at 1526-27.  We stated that "[s]eparate crimes do not become a single offense merely because they arise out of the same criminal episode or because the same gun is paired with each underlying offense.  Instead, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not."  Id. at 1527.

Although the above cases dealt with challenges to consecutive sentences under section 924(c), rather than challenges to the underlying convictions themselves, as is the case here, it was necessary in each case to determine first whether the underlying predicate offenses constituted one "crime of violence" or two.  Thus, implicitly we were required to determine whether one or two convictions for those underlying offenses could be maintained under the language of the statute.  We therefore find these cases to be controlling.

In order to determine in the present case whether the predicate offenses of robbery and carjacking are one crime of violence or two under section 924(c) we look to the test developed in Blockburger, even though the offenses occurred during a continuous course of conduct.  Here, Malone was convicted of two violations of section 924(c) based on the separate underlying offenses of robbery in violation of 18 U.S.C. § 1951, and carjacking in violation of 18 U.S.C. § 2119.

It is undisputed that section 1951 and 2119 are directed at different types of conduct and require proof of different elements. Thus, the district court did not commit plain error in determining that two convictions were authorized under the language of section 924(c).

## III. Hobb's Act Claims

Malone next argues that the district court erred in instructing the jury that only a de minimis effect on interstate commerce is needed to prove the jurisdictional nexus under 18 U.S.C. § 1951.[3] According to Malone, the Hobb's Act requires a showing of a substantial effect on interstate commerce. A panel of this Circuit has previously held that the "'jurisdictional predicate of the Hobbs Act can be satisfied by a showing of any *de minimis* effect on commerce.'" United States v. Bolton, 68 F.3d 396, 398 (10th Cir. 1995) (quoting United States v. Zeigler, 19 F.3d 486, 489 (10th Cir. 1994). We agree with the holding of Bolton and are bound, in any event, by this precedent. See In re Smith, 10 F.3d 723, 724 (10th Cir. 1993) ("We cannot overrule the judgment of another panel of

---

[3] In Malone's initial appeal to this court, he only raised a challenge to his conviction of attempted Hobbs Act robbery of the Grandy's restaurant. Malone subsequently filed with this court a motion to amend his appeal to add a similar challenge to his conviction under the Hobbs Act for the robbery of the U.S. Express. We grant this motion, as it raises no new issues.

this court. We are bound by the precedent of prior panels absent en banc reconsideration or a superseding contrary decision by the Supreme Court.").

Malone, however, points to the Supreme Court's recent decisions in Jones v. United States, __ U.S. __, 120 S.Ct. 1904, 146 L.Ed.2d 902 (2000) and United States v. Morrison, __ U.S. __, 120 S.Ct. 1740, 146 L.Ed.2d 658 (2000) to support his argument that more than a de minimis showing is required under the Hobbs Act. We do not believe that either of these decisions affect this court's prior holding that only a de minimis showing is required under the Hobbs Act.

In United States v. Morrison, the Supreme Court held that 42 U.S.C. § 13981 of the Violence Against Women Act of 1994 ("VAWA") could not be sustained under the Commerce Clause. See 120 S.Ct. at 1754. In reaching this conclusion, the court relied heavily on its earlier decision of United States v. Lopez, 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995). This court in Bolton determined that Lopez was consistent with our precedent in that only a de minimis effect on interstate commerce in individual instances was necessary to prove the jurisdictional nexus under the Hobbs Act. Bolton, 68 F.3d at 399. We find nothing in Morrison that would alter this conclusion.

In striking down section 13981 the Court relied on the fact that section 13981, like the Gun-Free School Zones Act of 1990 which was struck down in Lopez, was attempting to regulate non-economic criminal conduct. Morrison, 120

- 19 -

S.Ct at 1750. Moreover, the Court pointed out that section 13981, again like the Gun-Free School Zones Act of 1990, contained no jurisdictional element establishing that "the federal cause of action is in pursuance of Congress' power to regulate interstate commerce." Morrison, 120 S.Ct. at 1751. Unlike the statutes at issue in Morrison and Lopez, the Hobbs Act regulates economic activity. Furthermore, the Hobbs Act contains an explicit and expansive jurisdictional element establishing that it is in pursuance of Congress' power to regulate interstate commerce. See 18 U.S.C. § 1951(a)(b)(3).[4] Thus, we do not believe Morrison impacts our prior decisions discussing the jurisdictional element of the Hobbs Act.

Likewise, we do not believe Jones v. United States impacts our Hobb Act precedent. In Jones, the Supreme Court examined the federal arson statute which makes it a federal crime to damage or destroy "by means of fire or an explosive, any . . . property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce . . . ." 18 U.S.C. § 844(i). In particular, the Court determined that arson of an owner-occupied private residence did not

---

[4] The Hobbs Act provides for the punishment of "[w]hoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do . . . ." 18 U.S.C. §1951(a). The act then further defines commerce as "all commerce between points within the same State through any place outside such State; and all other commerce over which the United States has jurisdiction." 18 U.S.C. § 1951(b)(3).

- 20 -

fall within the scope of 18 U.S.C. § 844(i). See Jones, 120 S. Ct. at 1910-11. In reaching this conclusion, the Court focused on the language of section 844(i) which contains the qualifying words "used in" interstate or foreign commerce. The Court found that the word "used" signaled that Congress required that the damaged or destroyed property "must itself have been used in commerce or in an activity affecting commerce." Id. at 1909-10. The Court then determined that "used in" meant that the building be actively used for commercial purposes. See id.

Unlike the federal arson statute, the Hobbs Act has no similar qualifying language. Instead, the language of the Hobbs Act indicates Congress' intention to invoke its full authority under the Commerce Clause. See Jones, 120 S.Ct. at 1909 (stating that when Congress uses the words "affecting commerce" without qualification, it intends to invoke its full authority under the Commerce Clause). Thus, the Hobbs Act does not suggest that Congress intended to limit its jurisdiction in any way. We therefore find Jones inapposite. Thus, we find no error in the district court's instructions to the jury that only a de minimis effect on interstate commerce must be proven under the Hobbs Act.

**IV. Sentencing Guidelines**

A. Section 2B3.1(b)(4)(A)[5]

Malone next argues that the district court erred when it increased his base offense level for the carjacking pursuant to U.S.S.G. § 2B3.1(b)(4)(A). This section provides that "[i]f any person was abducted to facilitate commission of the offense or to facilitate escape, increase by 4 levels." U.S.S.G. § 2B3.1(b)(4)(A). Malone contends that the evidence was insufficient to prove that he intended to abduct DeMauro to facilitate the carjacking; instead, he argues the evidence showed Malone abducted DeMauro to facilitate the U.S. Express robbery. Because Malone failed to object to the PSR and otherwise failed to raise an objection during the sentencing proceedings before the district court, we review this claim for plain error only. Fed. R. Crim. P. 52(b); see also United States v. Jones, 80 F.3d 436, 438 (10th Cir. 1996).

---

[5] The district court, as well as both parties on appeal, state that Malone's sentence was enhanced by four levels pursuant to U.S.S.G. § 2B3.1(b)(4)(B). It is clear, however, that the applicable section is §2B3.1(b)(4)(A). Subpart (B) only provides for a two-level enhancement for physically restraining a person to facilitate commission of the crime. It is subpart (A) which provides for the four-level enhancement for the abduction of a person to facilitate commission of the crime. Both parties on appeal focus their argument on whether Malone "abducted" the victim to facilitate commission of the crime, and whether a "four-point" enhancement was proper. We therefore assume that the parties and the district court meant to refer to section 2B3.1(b)(4)(A).

We find no plain error in the application of § 2B3.1(b)(4)(A) in this case. The evidence before the district court showed that DeMauro was abducted, at least in part, to accomplish the carjacking, and not simply to facilitate the robbery of U.S. Express. If Malone and his co-defendants had only wanted to use DeMauro to accomplish the robbery of U.S. Express, they could have just put her in their car. Instead, they made a conscious choice to carjack DeMauro's car with her in it. Moreover, by abducting DeMauro, Malone was able to insure that she could not call 911 or otherwise interfere with his and his cohorts' future plans. Thus, there was sufficient evidence from which the district court could properly apply the four level enhancement. The district court's conclusion that DeMauro was abducted to facilitate the commission of the carjacking, therefore, was not plain error.

B. Grouping under § 3D1.2(c)

Malone next argues that the district court erred when it failed to group his carjacking offense with the U.S. Express robbery. If grouping had occurred, Malone's offense level would have been decreased by two points, yielding a lower sentencing range. Because Malone failed to object to the district court's application of the sentencing guidelines, we review only for plain error. See Gilkey, 118 F.3d at 704. Applying this standard, we find that the district court did not err in failing to group the U. S. Express robbery and the carjacking.

U.S.S.G. § 3D1.2 provides: "All counts involving substantially the same harm shall be grouped together into a single Group.  Counts involve substantially the same harm within the meaning of this rule: . . . (c) [w]hen one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts."  Comment 5 to this section further explains that "when conduct that represents a separate count, *e.g.*, bodily injury or obstruction of justice, is also a specific offense characteristic in or other adjustment to another count, the count represented by that conduct is to be grouped with the count to which it constitutes an aggravating factor."  In this case, Appellant was convicted of one count of carjacking and one count of robbery of the U.S. Express, and was sentenced independently for each of these counts.  Appellant asserts that because carjacking is a specific offense characteristic of robbery, see U.S.S.G. § 2B3.1(b)(5) ("If the offense of robbery involved carjacking, increase by two levels."), the court was required to group the offenses.  We disagree.

The application note discussing § 3D1.2(c) states that this provision "prevents 'double counting' of offense behavior."  U.S.S.G. § 3D1.2(c), note 5.  Double counting occurs when "the same conduct on the part of the defendant is used to support separate increases under separate enhancement provisions which necessarily overlap, are indistinct, and serve identical purposes."  United States v.

Rucker, 178 F.3d 1369, 1371 (10th Cir. 1999) (internal quotations omitted). In this case, however, there was no double counting, because the district court did not enhance the U.S. Express robbery by two points under § 2B3.1(b)(5). Malone argues that under United States v. Gigley, 213 F.3d 503 (10th Cir. 2000), the district court was required to increase the U.S. Express robbery by two points for the carjacking, and thus would have then been required to group the robbery and the carjacking to avoid double counting.

In Gigley, the defendant pled guilty to possession with intent to distribute methamphetamine. When he failed to appear for sentencing, he was charged with failure to appear in the possession case. This court held that the district court was required to enhance the possession offense by two levels for obstruction of justice due to the failure to appear count, and then group the underlying offense with the failure to appear offense pursuant to § 3D1.2(c). See Gigley, 213 F.3d at 505-06 & n.2. Gigley is distinguishable from this case. In Gigley, we reviewed the district court under a de novo standard of review. As discussed above, our review on this issue is only for plain error. Under plain error review, we cannot say that the district court erred in not enhancing the robbery for involving carjacking. In Gigley, the underlying offense and the failure to appear charge were inextricably intertwined. The failure to appear charge could not have arisen without the existence of the underlying offense. In this case, the carjacking was a separate

crime, with separate and distinct facts from the U.S. Express robbery. The crime

of carjacking was complete before the U.S. Express robbery ever began.

Moreover, as discussed above, the carjacking, unlike the relationship between the

failure to appear charge and the drug charge in Gigley, was not necessary to the

U.S. Express robbery. Malone and his cohorts could have simply stolen the keys

to the business from DeMauro, or abducted her and placed her in one of their

cars. If Malone had carjacked the victim solely for the purpose of robbing her,

then a robbery charge would presumably have to be enhanced for involving

carjacking. However, we do not believe it was clearly erroneous not to enhance

the U.S. Express robbery where, as here, the carjacking was separate and distinct.

Thus, because the district court was not required to enhance the robbery, there is

no double counting issue as contemplated by the grouping provision under §

3D1.2(c).

> The application note to § 3D1.2(c) further explains that:

> Of course, this rule applies only if the offenses are closely related. It
> is not for example, the intent of this rule that (assuming they could
> be joined together) a bank robbery on one occasion and an assault
> resulting in bodily injury on another occasion be grouped together.
> The bodily injury (the harm from the assault) would not be a specific
> offense characteristic to the robbery and would represent a different
> harm. On the other hand, use of a firearm in a bank robbery and
> unlawful possession of that firearm are sufficiently related to warrant
> grouping of counts under this subsection.

U.S.S.G. § 3D1.2(c), note 5. The facts of the present case fall between these two scenarios. As discussed above, it was not plain error for the district court to decline to enhance the U.S. Express robbery for carjacking because the two crimes were not so closely related as to mandate enhancement under 2B3.1(b)(5). The same analysis is applicable in determining whether the two offenses are so closely related that they require grouping. Thus, as explained above, if Malone had carjacked DeMauro and robbed her, then the offenses would clearly need to be grouped. Where the crimes are distinct and separated by different underlying facts, however, we cannot conclude it was plain error for the sentencing judge to determine they were not closely related for purposes of grouping. As in the application notes example of the robbery and the assault, the harm caused by the U.S. Express robbery was not the same as the harm caused by the carjacking. These two offenses posed threats to distinct and separate societal interests–those of the U.S. Express and those of DeMauro. See United States v. Hines, 26 F.3d 1469, 1475 (9th Cir. 1994) (stating that "offenses should not be grouped if they pose threats to distinct and separate societal interests"). Thus, we conclude that the district court did not commit plain error in failing to group the robbery and the carjacking.

## CONCLUSION

For the reasons set forth above, the judgment of the district court is

AFFIRMED.